JAMES J. BOOKER AND OREN W. McCLAIN v. KOYT W. EVERHART AND KOYT W. EVERHART, SR., AND WIFE, BEATRICE M. EVERHART

No. 7621SC808

(Filed 20 April 1977)

1. Bills and Notes § 20— holder of negotiable promissory note — verified complaint — affidavit of payee — failure to show nonexistence of issues of material fact

Where plaintiffs' verified complaint stated a claim by the holders of a negotiable promissory note against the maker of the note, alleged assignment of the note by the payee for good and valuable consideration and agency for collection purposes, and had appended thereto the signed note, guaranty, assignment and agency for collection purposes, defendant maker and guarantors of the note were not entitled to summary judgment where an affidavit of the payee presented in opposition to the verified complaint failed to show the nonexistence of issues of material fact but instead raised issues of fact concerning the validity and purported revocation of the assignment.

2. Rules of Civil Procedure § 19— note executed by husband to wife — wife's assignment — husband's default — wife not necessary party to action

Where plaintiff attorneys represented the wife in arriving at a property settlement with her estranged husband, the husband executed a promissory note to the wife which his parents guaranteed, the wife assigned one-third of the amount of the note to plaintiff attorneys, and the husband subsequently refused to make payments on the note, the wife was not a necessary party in plaintiffs' action on the note instituted against the husband and the parents.

1

3. **Army and Navy § 1; Trial § 3— defendant in service — continuance denied — no error**

The trial court did not err in denying defendants' motion for a stay or continuance made pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940 because defendant husband was stationed in the Philippines, since defendant volunteered for the service 14 months after the present action was instituted; there was no showing that defendant requested leave or would not be able to obtain leave to be present at trial; there was no showing that defendant would be prejudiced or his rights would be materially impaired by his absence, particularly in view of the fact that his deposition was taken prior to his enlistment in the Navy, in the presence of counsel for both parties to the litigation.

4. **Rules of Civil Procedure § 26— defendant in Philippines — motion for deposition — cost placed on movant — motion quashed**

Where defendants sought to take the deposition two weeks before trial of one defendant who was stationed with the Navy in the Philippines, the trial court did not abuse its discretion in requiring defendants to advance plaintiffs' counsel's travel and living expenses to enable his presence at the deposition or in ordering, in the alternative, that should defendants fail to provide the expense money, their notice to take defendant's deposition be quashed, since the court determined that two weeks was insufficient time to allow plaintiffs to engage local counsel and acquaint such counsel with the case; the party to be deposed failed to notify the court of his impending military duty and overseas service; he failed to have his deposition taken prior to volunteering for the Navy and being shipped overseas; he had already given a deposition in the case; and the court found that taking defendant's deposition would constitute unreasonable annoyance and oppression while placing undue burden and expense on the plaintiffs.

5. **Uniform Commercial Code § 27— action on note — rights of third person — claiming by defaulting party and guarantors improper**

Where plaintiff attorneys represented the wife in arriving at a property settlement with her estranged husband, the husband executed a promissory note to the wife which his parents guaranteed, the wife assigned one-third of the amount of the note to plaintiff attorneys and designated them as agents for collection, the husband subsequently refused to make payments on the note, and plaintiffs instituted this action against the husband and his parents, the trial court properly excluded evidence of the attorney-client relationship between the wife and plaintiffs and its legality, since that issue involved a claim or defense held by the wife who was not a party to the action against plaintiffs, and defendants could not raise her possible claim as a defense against the holders of the note. G.S. 25-3-306.

6. **Principal and Agent § 3— agency coupled with interest — agency irrevocable — evidence of revocation excluded**

Where plaintiffs were given a one-third interest in the note sued upon as well as authority to collect the note, their agency was coupled with an interest and was therefore irrevocable; since evi-

Booker v. Everhart

dence of revocation of agency would have been of no effect, exclusion of such evidence was harmless in an action to recover on the note.

**7. Bills and Notes § 19— defenses of undue influence and duress — hearsay evidence — exclusion proper**

In an action to recover on a note the trial court did not err in refusing to allow into evidence testimony pertaining to the defenses of undue influence and duress where the only evidence of threats was hearsay and there was no evidence that the alleged threats came from plaintiffs.

**8. Bills and Notes § 19— promissory note — execution under duress — insufficiency of evidence**

Where defendant husband sold parcels of property jointly owned by him and his wife by forging his wife's name on the deeds, and defendant subsequently entered into a property settlement agreement with the wife whereby she quitclaimed her interest in the property in return for a promissory note executed to her for a named sum, defendants' contention that the husband was coerced into executing the note by threats and pressure from the plaintiffs, who were the wife's attorneys, to have him criminally prosecuted and disbarred for the forgeries is without merit, since the only competent evidence concerning that issue was that in negotiating the property settlement, plaintiffs informed the husband that they knew he had signed his wife's name on the deeds unknown to her; they intended to protect her interest; that to do so they had prepared a letter to be sent to savings and loan associations involved in the real estate transactions informing them of the wife's legal interests in the property; and such action did not amount to duress but merely demonstrated an intent to enforce rights believed, in good faith, to belong to plaintiffs' client.

**9. Rules of Civil Procedure § 50— party having burden of proof — recovery not dependent on credibility of witnesses — directed verdict proper**

A directed verdict for the party with the burden of proof is not improper where his right to recover does not depend on the credibility of his witnesses, and the pleadings, evidence and stipulations show that there is no genuine issue of fact for jury consideration.

**10. Bills and Notes § 20— action on promissory note — directed verdict proper**

Trial court in an action on a promissory note properly granted a directed verdict in plaintiffs' favor where defendants' own evidence established default on the note and indorsement of the note and delivery to plaintiffs; moreover, claims and defenses of a third person not a party to the action which defendants attempted to raise on their own behalf did not constitute genuine issues for jury determination, nor did defendants carry their burden of proof in showing the affirmative defenses of failure of consideration, duress and undue influence.

APPEAL by defendants from *Rousseau, Judge.* Judgment entered 29 April 1976 in Superior Court, FORSYTH County. Heard in the Court of Appeals 15 March 1977.

This appeal stems from a complex series of proceedings and circumstances involving the divorce of defendant Koyt Everhart, Jr. (Koyt, Jr.), and Jane Crater Everhart (Jane). On 1 May 1972 Koyt, Jr., and Jane entered into a deed of separation and property settlement, with Jane being awarded custody of their minor son and $900.00 a month alimony and child support. Prior to the divorce, Koyt, Jr., who was a licensed attorney, and Jane, who was attending graduate school, engaged in the real estate development business. Koyt, Jr., purchased land in both their names, had houses built on the land, and then sold the houses and lots to homebuyers. Jane would oversee the interior decoration and finishing of the houses.

After the divorce and at some time prior to August, 1972, Koyt, Jr., obtained custody of the son through civil action and informed Jane of his intent to cease further alimony and child support payments. On or about 3 August 1972 Jane first met with plaintiff Booker, an attorney, seeking legal advice concerning the return of her son and continuation of support payments. At that time Jane had no income or funds with which to pay hourly attorney's fees. At the subsequent trial in this matter, plaintiffs' evidence tended to show that Booker agreed to represent Jane on a one-fourth contingency fee basis but that he would have to consult with his law partner, co-plaintiff McClain, before firming up the fee arrangement. After that consultation Booker informed Jane that a one-third contingency fee would be required because representation of her would likely cause a diminution of his partner's substantial real estate practice with Koyt, Jr.'s father, who was also in the real estate development and home building business. Jane agreed.

Plaintiffs discovered that Koyt, Jr., had sold twenty-two parcels of property jointly owned by Koyt, Jr., and Jane by forging her name on the deeds. Jane had been unaware of these transactions when the original separation agreement between her and Koyt, Jr., had been executed.

Plaintiffs instituted negotiations with Koyt, Jr., and his counsel. The results were twofold. First, custody of the child was restored to Jane, and support payments were resumed. Secondly, a supplemental property settlement was agreed to, whereby Jane quitclaimed her interest in the twenty-two parcels of property valued at approximately $500,000.00 in return for a promissory note executed on 30 October 1972 to Jane or

her order in the amount of $150,000.00 payable in eighteen yearly installments without interest. Plaintiffs required security on the note. To that end Koyt, Jr., obtained a guaranty from his parents, who are co-defendants in the present action. The guaranty, endorsed by the parents, was attached to the note.

On 6 December 1972 Jane signed a paper which was then attached to the note and which assigned to plaintiffs a one-third interest in the notes "[f]or services rendered and for future collection services that might be rendered . . ." and which also designated them as agents for the collection of the yearly installments. Jane also delivered the note into the possession of the plaintiffs. Koyt, Jr., made the first payment of $12,500.00 by its due date of 31 December 1972. Plaintiffs retained one-third of that amount and delivered the remainder to Jane.

By 31 December 1973 Jane apparently experienced a change of heart. She allegedly wrote plaintiffs informing them that she no longer desired their representation and no longer required them as agents for collection purposes. She also purportedly cancelled the debt on a copy of the note. Koyt, Jr., notified plaintiffs that he would make no further payments on the note. When the installment came due and was not paid, plaintiffs notified the guarantors that their principal had defaulted. No payment was forthcoming, whereupon plaintiffs declared the entire amount due as provided in the note and instituted suit against Koyt, Jr., and his parents.

In their verified complaint of 8 March 1974, plaintiffs alleged that defendants owed them $137,500.00 on the promissory note executed by Koyt, Jr., and guaranteed by the parents. One-third ($45,833.33) was due them as assignees of the note, and two-thirds ($91,666.67) was due them on behalf of Jane, who had authorized them to collect. Prior to answering, the defendants moved to dismiss on the grounds of failure to state a claim upon which relief could be granted and for failure to join a necessary party. In support of their motion, defendants submitted an affidavit by Jane which stated that plaintiffs undertook her representation without setting a fee, that later a one-fourth contingency fee was set, and that subsequently plaintiffs increased the fee to one-third of any property settlement reached with Koyt, Jr. Jane further stated that she thought the fee was too high, but she acquiesced. Prior to the suit she decided the promissory note was unfair and therefore cancelled

Booker v. Everhart

her copy of the note and allegedly terminated the plaintiffs' collection authority. Defendants' motion was denied.

The defendants filed their answer in May, 1974, admitting execution of the note and guaranty but alleging duress, failure of consideration, invalidity of the assignment, and illegality of the fee arrangement. Sometime after May, 1974, plaintiffs took Koyt, Jr.'s deposition. His counsel was present and asked questions. At sometime prior to May, 1975, Koyt, Jr., volunteered for military service in the Navy. On 26 May 1975 he was assigned to duty in the Philippines, where he remained through trial.

On 2 December 1975 plaintiffs moved for summary judgment. The trial court granted defendants a continuance until after 1 January 1976 as to hearing on plaintiffs' motion. In the latter part of January plaintiffs renewed their motion for summary judgment, to which defendants filed response on 26 January 1976. On 30 January 1976 defendants moved that the case be entirely removed from the trial calendar pursuant to 50 U.S.C. App., Section 521 (the Soldiers' and Sailors' Civil Relief Act of 1940), on the grounds that defendant Koyt, Jr., would be absent from trial. On 20 February 1976 the trial court denied plaintiffs' motion for summary judgment, denied defendants' motion to remove, and, on its own motion, set trial for 26 April 1976 because plaintiffs and defendants could not agree on a trial date.

On 1 April 1976, a month after the trial date had been set and one month prior to trial, defendants gave notice to take Koyt, Jr.'s deposition on 13 April 1976. at Subic Bay in the Philippines. Plaintiffs immediately sought a protective order requesting approximately a $9,000.00 payment from defendants to cover travel expenses and attorney's fees for attending Koyt, Jr.'s deposition. On 9 April 1976 the trial court granted a protective order, required defendants to advance $2,500.00 to plaintiffs for travel expenses, and, in the alternative, quashed the notice to take deposition should defendants fail to make the advance.

Defendants did not make the advance, and therefore Koyt, Jr.'s deposition was not taken. At trial evidence was presented by both plaintiffs and defendants. At the close of evidence the trial court granted plaintiffs' motion for a directed verdict and entered judgment for plaintiffs in the amount of $45,833.33 plus

interest. That award represented plaintiffs' interest in the note. The trial court dismissed the claim as to the amount due Jane. Defendants appealed.

*Hudson, Petree, Stockton, Stockton & Robinson, by Norwood Robinson and Steven E. Philo, for plaintiffs.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter and William C. Raper, for defendants.*

BROCK, Chief Judge.

Defendants bring forward seven assignments of error for argument on appeal. In the seventh assignment of error defendants contend that the trial court erred in denying their motions to dismiss the action. This argument is without merit.

Defendants made their motions under G.S. 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief could be granted and Rule 12(b)(7) for failure to join a necessary party. The motions were made prior to answer and were supported by an affidavit from Jane. Since matters outside the pleadings were presented to the trial court, the motion under Rule 12(b)(6) is treated as one for summary judgment under G.S. 1A-1, Rule 56, and the test then is whether there exists a genuine issue of material fact and whether movant is entitled to judgment as a matter of law. *Smith v. Smith,* 17 N.C. App. 416, 194 S.E. 2d 568 (1973).

[1] Plaintiffs' complaint was verified. On its face it stated a claim by the holder of a negotiable promissory note against the maker of said note. Appended to the complaint were the signed note, guarantee, assignment and indorsement to collect. The plaintiffs allege assignment from Jane for good and valuable consideration and agency for collection purposes. In counterpoint to the verified complaint is Jane's affidavit which stated that the assignment represented a fee arrangement entered into and increased after plaintiffs had undertaken to represent Jane, making such assignment, defendants argue, illegal. The affidavit also stated that Jane had revoked plaintiffs' agency.

Whether the defendants could raise a third party's defenses to the assignment is discussed *infra*, but at a minimum Jane's affidavit, when measured against plaintiffs' verified complaint, serves only to raise issues of fact concerning the assignment and revocation of agency rather than show the nonexistence of issues of material fact.

**[2]** Defendants' motion to dismiss for failure to join a necessary party, namely Jane, was also properly denied. Plaintiffs' complaint states a claim by the holder of a negotiable instrument against the maker and guarantor. There is no showing on the face of the complaint nor in defendants' motion and supporting affidavit that Jane is a necessary party under G.S. 1A-1, Rule 19(a), united in interest with either party to the action, or that the claim cannot be determined without prejudice to her rights under Rule 19(b).

**[3]** In their fifth assignment of error defendants contend that the trial court erred in denying a stay or a continuance in the proceedings after their motion made pursuant to 50 U.S.C. App., Section 521, the Soldiers' and Sailors' Civil Relief Act of 1940. While the Act mandates a continuance of a trial where military service would cause a party to be absent, it also empowers the trial judge to deny the continuance if, in his opinion, "the ability of the plaintiff to prosecute the action or defendant to conduct his defense is not materially affected by reason of his military service." The discretion lodged in the trial judge has been interpreted so as to prevent a party from using the provisions of the Act to shield his own wrongdoing or lack of diligence. *Boone v. Lightner*, 319 U.S. 561, 87 L.Ed. 1587, 63 S.Ct. 1223 (1943), *reh. denied* 320 U.S. 809, 88 L.Ed. 489, 64 S.Ct. 26 (1943); *Graves v. Bednar*, 167 Neb. 847, 95 N.W. 2d 123, 75 A.L.R. 2d 1056 (1959); *Glick Cleaning & Laundry Co. v. Wade*, 206 Ark. 8, 172 S.W. 2d 929 (1943).

The facts before the trial court on the motion to stay the proceedings indicate that Koyt, Jr., was not called to military service but volunteered. He was shipped to the Philippines on 26 May 1975, some fourteen months after the present suit was instituted against him on 8 March 1974. There is no showing in the affidavit Koyt, Jr., submitted in support of the motion that he requested leave or would not be able to obtain leave to be present at trial. Nor is there a showing in his affidavit, beyond a mere conclusory statement, of the ways his defense would be prejudiced or his rights materially impaired by his absence. Furthermore, his deposition had been taken in May, 1974, in the presence of counsel for both parties to the litigation. Koyt, Jr., was a licensed attorney in North Carolina at the time suit was brought and at the time he volunteered for military service, yet he took no steps to seek a speedy determination of the case prior to reporting for active duty.

The above-enumerated facts were incorporated in findings of fact by the trial court in its order denying the stay. The trial court also found that Koyt, Jr.'s absence would not materially prejudice his defense. The court's findings were substantially supported in the record. Koyt, Jr.'s attempted use of the Soldiers' and Sailors' Civil Relief Act was one of policy and strategy rather than one caused by the necessities of military service and, as such, was improper. *Boone v. Lightner, supra*. The trial court did not abuse its discretion in denying the stay.

[4] In their sixth assignment of error defendants argue that the trial court erred in quashing defendants' notice to take Koyt, Jr.'s deposition. On 24 February 1976 after denying defendants' motion for a stay, the trial court set 26 April 1976 as the trial day. Over a month later, on 1 April 1976, defendants gave notice that they intended to take Koyt, Jr.'s deposition on 13 April 1976 at Subic Bay in the Philippines. Upon plaintiffs' motion the trial court entered a protective order pursuant to G.S. 1A-1, Rule 26 (c), requiring defendants to advance plaintiffs' counsel's travel and living expenses to enable his presence at the deposition. In the alternative, the court ordered that, should defendants fail to provide the expense money, their notice to take deposition be quashed.

The grounds stated by the trial court in rendering its order were that the two weeks between notice and deposition date were insufficient time for plaintiffs to engage local counsel and sufficiently acquaint such counsel with the case; that Koyt, Jr., failed to notify the court of his impending military duty and overseas service; that he failed to have his deposition taken prior to volunteering for the Navy and being shipped overseas; and that he had already given a deposition in the case. From these findings the trial court found that taking Koyt, Jr.'s deposition would constitute unreasonable annoyance and oppression while placing undue burden and expense on the plaintiffs. The trial judge's order under Rule 26 (c) is discretionary and is reviewable only for abuse of that discretion.

Defendants argue that the judge abused his discretion in that his ruling denying a stay in the proceedings meant Koyt, Jr.'s absence at the trial. Therefore, the only way Koyt, Jr., could tell his side of the story was through a deposition. It is evident that Koyt, Jr.'s deposition was not for discovery pur-

poses but was for the purpose of recording his testimony solely for his benefit at the trial.

> "Without intending to state a rule upon the subject, it may be said that where one party proposes to take the deposition of a witness at a place far distant from the place of trial, not as discovery but to be offered as evidence in the case, the testimony being for his sole benefit and not sought by the other party, it would ordinarily seem fair that he should bear the cost of taking it. If it appears to the court that the testimony is of such nature that it warrants the presence at the taking of the deposition of the attorney who is to try the case it would seem also proper to include the traveling expenses of such attorney." 4 Moore's Federal Practice, ¶ 26.77, p. 548.

The trial judge, under Rule 26(c), may protect a party when justice requires, and that discretion is certainly exercisable in impelling and unusual circumstances. *Towe v. Sinclair Refining Company*, 188 F. Supp. 222 (D. Md. 1960). Here defendants seek to take the deposition of one of the defendants who is 10,000 miles away, who, as a lawyer, has an understanding of legal procedure, and who took no action to secure his own deposition from the time his answer was filed in May, 1974, until he was shipped abroad in May, 1975. We find no abuse of discretion in the trial court's protective order and the subsequent quashing of notice to depose when defendants chose not to comply.

[5] In defendants' assignments of error two through four, defendants argue that the court erred in excluding certain types of testimony. First, defendants attempted to introduce statements from Jane's affidavit and deposition pertaining to the attorney-client relationship between Jane and the plaintiffs. Defendants contend that the testimony would show the relationship to be illegal. That being so, the assignment to plaintiffs of a one-third interest in the note would be void, and the assignment would not serve as a basis for plaintiffs' action against defendants.

We need not here decide the legality *vel non* of the attorney-client relationship between Jane and the plaintiffs. That issue involves a claim or defense held by Jane, a third party, against the plaintiffs. The suit before this Court is between the maker of a negotiable note and the holder of same. Under G.S. 25-3-

306(d) "[t]he claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the person himself defends the action for such party." The Official Comment to G.S. 25-3-306 explains:

> "The contract of the obligor is to pay the holder of the instrument, and the claims of *other persons against the holder* are generally not his concern . . . The provision includes all claims for rescission of a negotiation, whether based on incapacity, fraud, duress, mistake, illegality, breach of trust or duty or any other reason." (Emphasis added.)

Jane has not intervened in this suit to allege her own claims or defenses against the plaintiffs. The defendants cannot raise her possible claim as defenses against the holder. Thus exclusion of her testimony pertaining to the illegality of the attorney-client relationship was not error.

The defendants next argue that the trial court erred in not allowing the introduction into evidence of testimony concerning Jane's grant of agency to the plaintiffs and her purported revocation of same. If there was error in excluding testimony concerning revocation, it was harmless error. The assignment and authority to collect were executed in the same document, signed by Jane, and physically attached to the note. In the document Jane assigned to the plaintiffs a one-third interest in the note itself. She stated that the assignment was made in return for services rendered and for future collection services that might be rendered by the plaintiffs. She also authorized all collections on the note to be made through them.

[6] When agency is coupled with an interest, it becomes irrevocable. Lee, N. C. Law of Agency and Partnership, § 93. The power to collect a debt is not ordinarily considered as a power coupled with an interest. However, the authority to collect a debt is coupled with an interest "where the agent acquires an actual interest in the subject matter itself, as distinguished from the proceeds thereof, and in such case the power is considered to be irrevocable." 3 Am. Jur. 2d, § 67, p. 469. Here the plaintiffs were given a one-third interest in the note itself, as well as the authority to collect it. Their agency is coupled with an interest and is therefore irrevocable. Since evidence of revocation would be of no effect, its exclusion would be harmless.

[7] In their third assignment of error concerning evidentiary rulings, defendants contend that the trial court erred in refusing to allow into evidence testimony pertaining to the defenses of undue influence and duress. The gist of defendants' argument is that Koyt, Jr., was coerced into executing the note to Jane by threats and pressure from the plaintiffs to have him criminally prosecuted and disbarred for forging his wife's name to certain deeds.

In *Link v. Link*, 278 N.C. 181, 194, 179 S.E. 2d 697, 704-05 (1971), the Supreme Court stated:

" 'Duress exists where one, by the *unlawful* act of another, is induced to make a contract or perform or forego some act under the circumstances which deprive him of the exercise of free will.' (Emphasis added.) (Citations omitted.) Unquestionably, an essential element of duress is a *wrongful* act or threat. (Citations omitted.) Ordinarily, it is not wrongful and, therefore, not duress for one to procure a transfer of property by stating in the negotiations therefor that, unless the transfer is made, he intends to institute or press legal proceedings to enforce a right which he believes, in good faith, that he has."

Where there is no coercion amounting to duress, undue influence may exist when the transfer, performance or other action results from the application of "moral, social or domestic" force such as to prevent free exercise of will or true consent. *Ibid.* at 196, 179 S.E. 2d at 706.

The only evidence pertaining to threats was elicited from the testimony of Koyt, Jr.'s mother and father and was to the effect that Koyt, Jr., told them, on one hand, that he would be disbarred and prosecuted and, on the other, that Koyt, Jr., told his parents that he had been told he would be disbarred and prosecuted if he did not make the note and they did not guarantee it. As evidence tending to show the truth of the assertion that the plaintiffs had threatened Koyt, Jr., his parents' testimony is clearly hearsay and was properly excluded. 1 Stansbury, N. C. Evidence, § 138, pp. 459-60. Furthermore, none of the testimony excluded by the trial court shows that it was the plaintiffs who threatened or even suggested disbarment proceedings or forgery prosecution.

[8] The only competent evidence concerning this issue was that in negotiating the supplemental property settlement, plaintiffs

informed Koyt, Jr., and his counsel that they knew Koyt, Jr., had signed his wife's name on the deeds, unknown to her; that they intended to protect her interest; and that to do so they had prepared a letter to be sent to savings and loan associations involved in the real estate transactions informing them of Jane's legal interests in the properties. Such action does not amount to duress but merely demonstrates an intent to enforce rights believed, in good faith, to belong to plaintiffs' client. *Link v. Link, supra.* Nor does such evidence establish undue influence in that at all times during the negotiations for the note and supplemental property settlement, Koyt, Jr., who was himself an attorney, was represented and advised by counsel.

In the last assignment of error to be considered, defendants contend that the trial court erred in granting a directed verdict in plaintiffs' favor at the close of all evidence. They argue that by denying material allegations in the plaintiffs' complaint, by raising affirmative defenses, and by presenting evidence thereon, they are entitled to go to the jury based on the reasoning in *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971). Defendants say that by denying material allegations in the complaint, issues of fact are raised upon which the plaintiffs have the burden of proof, and under *Cutts* the trial judge cannot direct a verdict in favor of a party with the burden of proof.

[9] While we adhere to the ruling in *Cutts,* we do not find defendants' arguments persuasive. In *Cutts* and the cases cited by defendants employing the *Cutts'* rationale, a party with the burden of proof on a genuine issue may not have a directed verdict, even if his evidence is uncontradicted, where his right to recover depends on the credibility of his own witnesses. *Id.* A directed verdict for the party with the burden of proof, however, is not improper where his right to recover does not depend on the credibility of his witnesses and the pleadings, evidence, and stipulations show that there is no "issue of genuine fact" for jury consideration. *Price v. Conley,* 21 N.C. App. 326, 204 S.E. 2d 178 (1974).

[10] The pleadings, evidence, and stipulations before the trial court establish the following. Defendants denied plaintiffs' allegations that there had been an effective assignment of the note by Jane to plaintiffs and that plaintiffs were her agents. Defendants tried to show that the assignment was based on an illegal contract, thus voiding it, and that Jane had revoked the agency. As discussed *supra,* G.S. 25-3-306(d) prohibits the

maker of a note from asserting claims of a third person against the holder. These denials and proofs offered by defendants attempt to raise as matters of defense to their own liability on the note, defenses and claims of Jane that tend to show the rescission of her negotiation of the note to plaintiffs. We do not here comment on the validity of Jane's claims except to say that defendants were not entitled to raise them and that Jane did not, as she could have done, intervene. Since defendants could not raise Jane's defenses and claims, those claims do not constitute genuine issues for jury determination. As to the other material allegation denied, that defendants had defaulted, Koyt, Jr.'s own testimony in the form of statements made by him in his deposition establishes that he was notified by plaintiffs that payment was due in December, 1973, and that he would make no further payments. The plaintiffs' burden on the issue of default was met for them by defendants' own testimony. Where the moving party's burden on an issue is met by the testimony of the opposing party, directed verdict on that issue is permissible. *Price v. Conley, supra.*

The pleadings, stipulations, and evidence properly before the trial court showed a promissory note made by Koyt, Jr., payable to Jane or her order that was technically sufficient to constitute a negotiable instrument under G.S. 25-3-104. Physically attached to the note was a writing signed by Jane authorizing plaintiffs to collect the entire amount of the note. Since the writing purported to be "for collection purposes," it constituted a restrictive indorsement under G.S. 25-3-205. Defendants stipulated that the signatures on the note and guarantee were valid. They also stipulated that Jane signed the indorsement. Defendants' own testimony established that Jane had delivered the note into the possession of the plaintiffs. Delivery and indorsement make the plaintiffs holders of the note under G.S. 25-1-201(20). A holder has the right to enforce payment in his own name. G.S. 25-3-301. In a suit on a negotiable instrument, one who is a holder need only produce the instrument to recover on it, when the signatures are admitted. G.S. 25-3-307(2).

Up to this point plaintiffs have established their right to recover on the notes through documents and the stipulations and testimony of the defendants. The only bar to their recovery occurs if the defendants establish a defense. G.S. 25-3-307(2). Defendants have alleged failure of consideration, duress, and

undue influence. These defenses are affirmative defenses under G.S. 1A-1, Rule 8. Thus the burden of proof shifts to the defendants. With the right of the plaintiffs to recover established without recourse to the credibility of their own witnesses, a directed verdict under G.S. 1A-1, Rule 50, becomes proper against the defendants who have the burden on the affirmative defenses if their evidence is insufficient to carry those defenses to the jury. Sufficiency of evidence is a question of law to be determined by the court. *Prevatte v. Cabble,* 24 N.C. App. 524, 211 S.E. 2d 528 (1975).

Here defendants alleged failure of consideration for the making of the note but failed to introduce any evidence to establish that defense. Defendants did attempt to prove duress and undue influence. But for the reasons stated *supra,* the evidence offered to show unlawful or wrongful threats to Koyt, Jr., was inadmissible and properly excluded, while the remaining competent evidence was insufficient as a matter of law to establish either duress or undue influence. Since defendants' evidence was insufficient to create an issue of fact, directed verdict for the plaintiffs was proper.

For the reasons stated above, the judgment of the court below is

Affirmed.

Judges PARKER and ARNOLD concur.