THOMAS M. WILLIAMS, INDIVIDUALLY, AND D/B/A TOMMY WILLIAMS WRECK-
ER SERVICE v. STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY AND BECKY COX, AND JACK R. McKINNEY, INDIVIDUALLY AND
AS AGENTS, OR EMPLOYEES OF STATE FARM MUTUAL AUTOMOBILE IN-
SURANCE COMPANY

No. 8314SC145

(Filed 20 March 1984)

**1. Rules of Civil Procedure § 15.1— denial of motion to amend complaint**

The trial court did not abuse its discretion in denying plaintiff's motion to amend the complaint to add an additional cause of action after discovery had been completed and a month before trial.

**2. Rules of Civil Procedure § 26— denial of motion to compel discovery—allowance of protective order**

The trial court did not abuse its discretion in denying plaintiff's motion to compel discovery and in sustaining defendants' motion for a protective order where plaintiff's interrogatories and requests for production of documents were very broad; plaintiff failed to show that the materials sought were relevant or necessary; and it would have been burdensome to defendants to comply with plaintiff's request.

**3. Libel and Slander § 16— insufficient evidence of slander**

Plaintiff's evidence was insufficient for the jury in an action for slander where it tended to show that plaintiff owned an automobile body shop; on three occasions an employee of defendant insurer made statements to persons insured by defendant insurer to the effect that defendants had trouble working with plaintiff in the past and preferred not to work with him in the future; there was no question that plaintiff and defendants had disputes over repair work; the only specific instance mentioned by the employee was that plaintiff put used parts in cars and charged defendant insurer for new parts; and plaintiff admitted that he did this and that if there was excess money he gave it to the customer.

**4. Contracts § 34— interference with contractual rights—insufficient evidence**

Plaintiff's evidence was insufficient for the jury in an action for interference with contract by defendant insurer in refusing to accept plaintiff's estimate on the cost of repairs of an automobile which had been taken to plaintiff's automobile body shop and which was then repaired by another shop at a cost exceeding plaintiff's estimate, since defendant insurer had a legitimate

business interest in getting automobiles which it insured repaired correctly and for the lowest price, and since plaintiff testified that there was no contract when the automobile involved in the dispute was taken to another shop.

APPEAL by plaintiff from *Preston, Judge.* Judgment entered 4 August 1982 in Superior Court, DURHAM County. Heard in the Court of Appeals 13 January 1984.

Plaintiff appeals from allowance of defendants' motions for directed verdict in an action for slander and interference with contract.

*Robert B. Glenn, Jr., for plaintiff appellant.*

*Haywood, Denny & Miller, by George W. Miller, Jr., for defendant appellee.*

WHICHARD, Judge.

Prior to commencement of this action, plaintiff owned a mechanic and body shop, and defendant State Farm operated a claims adjustment service, in Durham. Defendants Cox and McKinney were employed by defendant State Farm as claims agents.

In February 1980 a dispute arose between plaintiff and defendants over the repair of an automobile. The owner called plaintiff and told him to take the automobile to his shop. Plaintiff did so, and prepared an estimate on the cost of repairs. The automobile was insured by defendant State Farm, however, and it refused to accept the estimate. Plaintiff refused to repair the automobile for the price defendant State Farm offered to pay. The automobile was then repaired by another shop. The final cost of repair exceeded plaintiff's estimate.

Subsequently defendants Cox and McKinney, on at least four occasions, discouraged persons who needed repair work from going to plaintiff. All of these persons nevertheless had their automobiles repaired by plaintiff.

Plaintiff then instituted this action for slander and interference with contract. The trial court allowed defendants' motions for directed verdict as to both claims.

[1] Plaintiff contends the court erred in denying his motion to amend his complaint. The motion was addressed to the discretion

of the trial court and will not be reviewed absent a showing of abuse of discretion. *Vending Co. v. Turner*, 267 N.C. 576, 580-81, 148 S.E. 2d 531, 534 (1966); *Saintsing v. Taylor*, 57 N.C. App. 467, 471, 291 S.E. 2d 880, 883, *disc. rev. denied*, 306 N.C. 558, 294 S.E. 2d 224 (1982). The "leave to amend should be freely given and the party objecting to the amendment has the burden to satisfy the trial court that he would be prejudiced thereby." *Garage v. Holston*, 40 N.C. App. 400, 403-04, 253 S.E. 2d 7, 9-10 (1979).

The complaint was filed on 4 February 1981. After discovery was completed, the case was scheduled for trial on 2 August 1982. On 2 July 1982 plaintiff filed a motion to amend the complaint in order to allege a violation of G.S. 75-1. We find no abuse of discretion in denying a motion to add an additional cause of action after discovery had been completed and a month before trial.

[2] Plaintiff contends the court erred in denying his motion to compel discovery and sustaining defendants' motion for a protective order. "It is a general rule that orders regarding matters of discovery are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Hudson v. Hudson*, 34 N.C. App. 144, 145, 237 S.E. 2d 479, 480, *disc. rev. denied*, 293 N.C. 589, 239 S.E. 2d 264 (1977). When a party requests production of documents under G.S. 1A-1, Rule 34, he must show good cause, which includes the elements of necessity and relevance. *Stanback v. Stanback*, 287 N.C. 448, 460, 215 S.E. 2d 30, 38-39 (1975). "[A] mere statement that an examination is material and necessary is not sufficient to support a production order." *Id.* at 461, 215 S.E. 2d at 39. The purpose of the rule is to "prevent litigants from engaging in mere fishing expeditions to discover evidence or using the rule for harassment purposes." *Id.*

The trial judge does not have unlimited authority to issue a protective order. "The statute [G.S. 1A-1, Rule 26(c)] provides that such order may be issued only 'for good cause shown' and that it may be issued only 'to protect a party or person from unreasonable annoyance, embarrassment, oppression or undue burden or expense.' " *Transportation, Inc. v. Strick Corp.*, 291 N.C. 618, 626-27, 231 S.E. 2d 597, 602 (1977). An order under Rule 26(c) is, however, discretionary, and is reviewable only for abuse of discretion. *Booker v. Everhart*, 33 N.C. App. 1, 9, 234 S.E. 2d 46, 53

(1977), *rev'd on other grounds*, 294 N.C. 146, 240 S.E. 2d 360 (1978).

The interrogatories and requests for production of documents here were very broad. Plaintiff has not shown that the materials sought were relevant or necessary. To comply with the request would have been burdensome to defendants. Under these circumstances we find no abuse of discretion in the denial of plaintiff's motion to compel discovery and the allowance of defendants' motion for a protective order.

[3] Plaintiff contends the court erred in granting defendants' motions for directed verdict. In deciding whether to grant a motion for directed verdict, "the court must consider the evidence in the light most favorable to the non-movant, deeming all evidence which tends to support his position to be true, resolving all evidentiary conflicts favorably to him and giving the non-movant the benefit of all inferences reasonably to be drawn in his favor." *Daughtry v. Turnage*, 295 N.C. 543, 544, 246 S.E. 2d 788, 789 (1978).

"Slander is the speaking of base or defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood." *Morrow v. Kings Department Stores*, 57 N.C. App. 13, 20, 290 S.E. 2d 732, 736, *disc. rev. denied*, 306 N.C. 385, 294 S.E. 2d 210 (1982). To be actionable, the statement must be false. *Id.; see also Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E. 2d 466, 468 (1955); *Parker v. Edwards*, 222 N.C. 75, 78, 21 S.E. 2d 876, 878-79 (1942). If the false words impute to a person "conduct derogatory to his character and standing as a business man and [tend] to prejudice him in his business," they are actionable *per se* and damages are presumed. *Badame v. Lampke, supra; see also Scott v. Harrison*, 215 N.C. 427, 430, 2 S.E. 2d 1, 2 (1939).

If statements are slanderous *per se*, the question arises of whether they were qualifiedly privileged.

A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and

in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The essential elements thereof are . . . good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.

*Stewart v. Check Corp.*, 279 N.C. 278, 285, 182 S.E. 2d 410, 415 (1971) (quoting 50 Am. Jur. 2d *Libel and Slander* § 195 (1970)). If a qualified privilege exists, plaintiff has the burden of proving actual malice to destroy the qualified privilege. *Stewart, supra,* 279 N.C. at 283, 182 S.E. 2d at 414; *see also Presnell v. Pell,* 298 N.C. 715, 260 S.E. 2d 611 (1979); *Bouligny, Inc. v. Steelworkers,* 270 N.C. 160, 154 S.E. 2d 344 (1967); *Towne v. Cope,* 32 N.C. App. 660, 233 S.E. 2d 624 (1977).

The record indicates that on three separate occasions defendant Cox made statements about plaintiff to persons insured by defendant State Farm. The remarks were made when the insureds came to defendant Cox to discuss repair of their automobiles. One insured testified to the following conversation with defendant Cox:

As to whether she asked me where the car was going to be repaired we discussed body shops in the area and I subsequently said something about Mr. Williams because I've known Tommy for a long time and my wife wanted the work done there also. As to what Ms. Cox said, well, she said that she had had troubles with Tommy before and wouldn't recommend taking the car there and specifically that Mr. Williams put used parts on a car and would charge for new parts and to have the car repaired properly it should not be done there.

Another insured testified to the following conversation with defendant Cox:

Ms. Cox said, "Well, I wouldn't recommend Mr. Williams for the simple fact that we have had some business dealings with him and they have not been very good. We have had some trouble with a few cars that we sent out there to him and because of those troubles we wouldn't recommend him to

anyone else." At that time it was also added [by] Ms. Cox, "Excuse me. I'm not supposed to say that."

. . . .

Ms. Cox told me that "We had a problem with a car out there." The names were mentioned where a quarter panel was supposed to be replaced and was not. It was repaired.

. . . .

When I asked about Mr. Williams she told me she would not recommend Tommy Williams to anyone. She said he was using used parts and charging for new parts was mentioned.

A third insured testified to the following conversation with defendant Cox:

[Ms. Cox] . . . said "Do you have anybody in particular you would like to have this done by?" and I said, "Yes, Tommy Williams." At this point she replied, saying, "Isn't there anybody else you would like to have that done by?"

I said, "No", and she said, "Well, we do not like to deal with Tommy Williams." And then she said, "Can't you think of anybody else?" and tried to dissuade me from the idea, but I wouldn't change my mind.

. . . .

She said, "We don't like to deal with Tommy Williams" and I said "That's who I want to have my car fixed by" as far as saying, "We've had trouble in the past with Tommy" I can't quite remember. There was something said about having trouble with Tommy, but I couldn't quite catch her meaning because I wasn't sure if Tommy had just [been] hard to get along with or what.

The thrust of the above conversations is that defendants had trouble working with plaintiff in the past and preferred not to work with him in the future. There is no question that plaintiff and defendants had disputes over repair work. Further, the only specific instance mentioned by defendant Cox was that plaintiff put used parts in cars and charged defendant State Farm for new parts. Plaintiff admitted that he did this and that if there was ex-

cess money he gave it to the customer. Since plaintiff admitted the truth of the statements made by defendants, the remarks were not actionable as slander. *Morrow, supra; Badame, supra; Parker, supra.* The court thus correctly granted directed verdict for defendants as to the slander claim.

[4] In regard to the interference with contract claim, our Supreme Court has stated that

> an action in tort lies against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party. . . .
>
> To subject the outsider to liability for compensatory damages on account of this tort, the plaintiff must allege and prove these essential elements of the wrong: *First,* that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. *Second,* that the outsider had knowledge of the plaintiff's contract with the third person. *Third,* that the outsider intentionally induced the third person not to perform his contract with the plaintiff. *Fourth,* that in so doing the outsider acted without justification. *Fifth,* that the outsider's act caused the plaintiff actual damages.

*Wilson v. McClenny,* 262 N.C. 121, 132, 136 S.E. 2d 569, 577-78 (1964), (quoting *Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E. 2d 176, 181-82 (1954) ). "If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability for so doing, no matter how malicious in actuality his conduct may be." *Childress, supra,* 240 N.C. at 675, 84 S.E. 2d at 182.

Defendant State Farm had a legitimate business interest in getting automobiles which it insured repaired correctly and for the lowest price. Also, plaintiff testified that there was no contract when the automobile involved in the February 1980 dispute was taken to another shop. The court thus correctly granted directed verdict on the interference with contract claim.

Plaintiff contends the court erred in excluding certain testimony. The record indicates that the witness would have testified regarding a conversation with defendant McKinney. Similar

evidence was introduced, however, through the testimony of the three insureds quoted above. Exclusion of this testimony thus did not constitute prejudicial error.

Affirmed.

Judges WEBB and WELLS concur.