Puckett v. KPMG, LLP, 2007 NCBC 2

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                        SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG                04 CVS 11289

| | | |
|---|---|---|
| STEPHEN R. PUCKETT, BETH W. PUCKETT, and P IV LIMITED PARTNERSHIP, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER** |
| KPMG, LLP, WILLIAM L. SPITZ, WACHOVIA BANK, N.A., Successor by merger to FIRST UNION NATIONAL BANK, N.A., QA INVESTMENTS, LLC, QUELLOS GROUP, LLC, RALPH LOVEJOY, CAROLYN BRANNAN, and JEFFREY MARTIN, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

*Rudolf, Widenhouse & Fialko, P.A. by David S. Rudolf and Taylor, Penry, Rash & Riemann, P.L.L.C. by J. Anthony Penry for Plaintiffs Stephen R. Puckett, Beth W. Puckett, and P IV Limited Partnership.*

*Parker, Poe, Adams & Bernstein, L.L.P. by Deborah L. Edney and William L. Rikard, Jr. and Steptoe & Johnson, L.L.P. by Matthew Lerner and James Moorhead for Defendants QA Investments, LLC and Quellos Group, LLC.*

Diaz, Judge.

{1}     Before the Court is the Motion of Defendants QA Investments, LLC and Quellos Group, LLC (collectively, "QA") for a Protective Order pursuant to Rule 26(c) of the North Carolina Rules of Civil Procedure (the "Motion"). Pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the North Carolina Business Court (the "Business Court Rules"), the Court elects to rule on this discovery dispute without oral argument. After carefully reviewing the Motion, the Plaintiffs' response, and QA's reply, the Court **DENIES** the requested relief.

# I.

## FACTS

{2}     The claims in this case arise out of certain investment strategies allegedly devised by the Defendants to create tax shelters that Plaintiffs (and others similarly situated) utilized to offset multi-million dollar capital gains on their tax returns.  (Am. Compl. ¶¶ 16-20.)

{3}     Plaintiffs Stephen R. Puckett, Beth W. Puckett, and P IV Limited Partnership filed their Complaint on 25 June 2004.   The Defendants removed the case to federal court, where it remained for almost two years pending a ruling on Plaintiffs' motion to remand.  By agreement of the parties, the case was remanded to Mecklenburg County state court in April 2006, where it was subsequently designated an exceptional case and assigned to me.  Plaintiffs amended their Complaint on 21 November 2006.

{4}     The Court entered a Case Management Order (the "CMO") in this case on 8 September 2006.  Among other things, the CMO requires that all parties or employees be made available for deposition on ten days' notice to counsel.  (Case Management Order 7.)  The CMO also requires that fact discovery be completed by 31 May 2007.  (Case Management Order 7.)

{5}     On 11 December 2006, Plaintiffs noticed the depositions of four QA employees[1] for 20-23 February 2007.  (Mem. in Supp. of Mot. for Protective Order Ex. D.)

{6}     In their opposition to the Motion, Plaintiffs state that each deposition will be finished in one day.  (Pls.' Resp. to QA's Mot. for Protective Order 7.)  Before Plaintiffs served the deposition notices, however, QA announced that it would be unavailable for depositions prior to April 2007, stating that "QA is not available for depositions prior to April and will not agree to any prior to April."  (Pls.' Resp. to QA's Mot. for Protective Order Ex. E.)  The reason,

---

[1] They include QA's chief executive officer, chief financial officer, and a managing principal.  (Mem. in Supp. of Mot. for Protective Order Ex. D.)

according to QA, is that it, and its lead counsel, are preparing for a 2 March 2007 trial in New York in a dispute involving a different tax shelter strategy. (Mem. in Supp. of Mot. for Protective Order 2-3.)

{7}    In response to QA's objection to the notices, Plaintiffs offered to reschedule the depositions to dates in early February. (Pls.' Resp. to QA's Mot. for Protective Order Exs. J, K.) Plaintiffs also offered to take the depositions at a location that would minimize the burden on QA's New York trial preparation. (Pls.' Resp. to QA's Mot. for Protective Order Ex. F.) However, QA declined Plaintiffs' offers, stating that "the depositions on the February dates do not work, and the witnesses will not be appearing then." (Pls.' Resp. to QA's Mot. for Protective Order Ex. I.)

{8}    When the case was first assigned to this Court on 22 May 2006, QA's counsel of record was Parker, Poe, Adams, & Bernstein, L.L.P. ("Parker Poe"), a firm with over 200 attorneys practicing in six offices in North and South Carolina. On 31 January 2007, the Court granted QA's motion to admit *pro hac vice* attorneys Jonathan Drimmer, Matthew Lerner, and James Moorhead, all of whom practice in the Washington, D.C. office of Steptoe & Johnson, L.L.P. Steptoe & Johnson, L.L.P. is an international firm with over 450 attorneys practicing in eight offices in the United States and abroad.

## II.

## RULING

{9}    Rule 26(c) of the North Carolina Rules of Civil Procedure allows the Court, for good cause shown, to grant a party relief from discovery so as to prevent "unreasonable annoyance, embarrassment, oppression, or undue burden or expense[.]" N.C.G.S. §1A-1, Rule 26(c) (2007). A decision to grant or deny relief pursuant to Rule 26(c) is within the Court's sound discretion.

*Ritter v. Kimball*, 67 N.C. App. 333, 335, 313 S.E.2d 1, 2 (1984); *Williams v. State Farm Mut. Auto. Ins. Co.*, 67 N.C. App. 271, 273, 312 S.E.2d 905, 907 (1984).

{10}    The Court declines to exercise its discretion here.  QA is correct that the Business Court Rules seek to promote good faith cooperation among parties and their lawyers with respect to the conduct of discovery.  Where the parties, however, fail to agree on the scheduling of depositions, the CMO intentionally provides a default requirement—that is, that all parties and their employees will be made available on ten days' notice to counsel.

{11}    In this case, Plaintiffs provided counsel with 60 days' notice of the dates that they intended to depose the four QA employees.  (*See* Mem. in Supp. of Mot. for Protective Order Ex. D.)  And although I agree that the Court's deposition notice rule is not absolute and must yield where justice requires, QA has failed to demonstrate sufficient good cause to warrant relief.

{12}    In the first place, QA drew an unreasonable line in the sand on 30 November 2006 when it refused to accede to the taking of any depositions until April 2007, particularly in light of the 31 May 2007 deadline for the completion of fact discovery.  Second, Plaintiffs were willing to take the contested depositions earlier in February to provide QA some breathing room for its March trial date, an offer that QA rejected.  (Pls.' Resp. to QA's Mot. for Protective Order Exs. J, K.)  Third, QA also rejected out of hand Plaintiffs' offer to minimize the burden of the depositions by agreeing to a location of QA's choosing, opting instead to trumpet its insistence that the QA employees would not be appearing as required by the CMO.  (Pls.' Resp. to QA's Mot. for Protective Order Ex. I.)  As a result, the Court has little sympathy for QA's assertion that the deposition dates are unduly burdensome.

{13}    The Court does not doubt that the QA employees to be deposed in this case have other important duties.  However, this case is important too, and QA's vague assertions of harm do not

persuade me that requiring its employees to appear for their depositions as scheduled (which Plaintiffs have stated will be limited to one day for each witness) will prevent them from meeting their other responsibilities, including preparing adequately for trial in New York.[2] This is so even after accounting for the time required to prepare for the depositions.

{14}  As for QA's preference that attorneys Matthew Lerner and James Moorhead defend the depositions in this case, there appears nothing to prevent them from doing so. But, if the task of preparing for the depositions and for QA's 2 March 2007 New York trial date proves too much for these lawyers, the Court is confident that QA can find one or two other lawyers to defend the depositions from among the over 650 practicing at the law firms that represent it in this case.[3]

## CONCLUSION

{15}  For the reasons set forth above, the Court **DENIES** QA's Motion for a Protective Order. The Court, however, will require Plaintiffs to take the contested depositions in the deponent's home city and state, or at some other agreed upon location.

This 13th day of February, 2007.

---

[2] Only three of the four deponents are scheduled to testify in the New York trial. (Pls.' Resp. to QA's Mot. for Protective Order 7.)

[3] For example, Jonathan Drimmer of Steptoe & Johnson was admitted *pro hac vice* at the same time as his colleagues. There is no indication in QA's motion papers that he is unavailable to defend the depositions. Similarly, William Rikard and Deborah Edney of Parker Poe, both of whom have been involved in this case since it was assigned to this Court, and both of whom are top-flight trial lawyers, do not appear to have a conflict with the deposition dates.

5