ELIZABETH LEWIS NIX v. JOHN WILLIAM NIX

No. 8515DC919

(Filed 1 April 1986)

**1. Divorce and Alimony § 30— equitable distribution—property brought to marriage by husband—no separate property**

    There was no merit to defendant's contention that he was entitled to retain as "separate property" the net value at the time of the marriage of a piece of property owned by him, since the trial court made detailed and specific findings of fact, and evidence was sufficient to support the disposition of the property. N.C.G.S. § 20-50(b).

**2. Divorce and Alimony § 30— equitable distribution—valuation of marital assets —sufficiency of evidence**

    Evidence was sufficient to support the trial court's determination as to valuation of the marital assets.

**3. Divorce and Alimony § 30— equitable distribution—source of funds theory applied**

    There was no merit to defendant's contention that the trial court erred in failing to apply the "source of funds" theory outlined in *Wade v. Wade*, 72

N.C. App. 372, and improperly valued defendant's separate property interest where the court in its extensive findings of fact undertook to trace the numerous purchases and divestments of the parties, applied the relevant precedent, and made an equitable distribution of the property.

APPEAL by defendant from *Allen, Judge.* Judgment entered 17 April 1985 in District Court, ALAMANCE County. Heard in the Court of Appeals 16 January 1986.

*T. Paul Messick, Jr., for plaintiff appellee.*

*Frederick J. Sternberg, P.A., for defendant appellant.*

BECTON, Judge.

This appeal involves a husband's claim under the North Carolina Equitable Distribution Act, N.C. Gen. Stat. Sec. 50-20 (Supp. 1983) that the trial court erred in the classification, valuation and division of property and, ultimately, in making its distributive award under that statute.

The plaintiff-appellee, Elizabeth Lewis Nix, and the defendant-appellant, John William Nix, were married on 21 October 1979, separated on 29 May 1983, and divorced on 11 December 1984. No children were born of this marriage.

When they first met, both parties were employed—Elizabeth Lewis Nix as a clerk earning minimum wage, and John Nix as a mechanic earning $19.00 per hour. Elizabeth Lewis Nix terminated her employment at the request of John Nix sometime shortly thereafter. At the time of their marriage, each party had separate property. Elizabeth Lewis Nix owned a house and small tract of land on Smith Street in Gibsonville, North Carolina, and John Nix owned 18.5 acres of property with a well, septic tank, and mobile home in Swepsonville, North Carolina. The fair market value of the Gibsonville property was $10,000 and was subject to a Purchase Money Deed of Trust with a balance of $4,972.00. The fair market value of the Swepsonville property was $18,500.00; the fair market value of improvements thereon was $8,200.00.

Prior to the marriage, John Nix had begun to build a house containing 3,300 square feet on the Swepsonville property. He had obtained a $35,000 loan to finance the construction. After the par-

ties were married, they obtained a second loan of $58,000 to complete the project. They repaid the balance of the first loan with the proceeds from the second. Both John Nix and Elizabeth Lewis Nix completed construction on the house, and it was sold for $95,900.00 in December of 1980. After paying the balance due on the $58,000 loan and other expenses incurred in connection with the construction and sale of the house, the parties realized a profit of $29,353.14. They deposited $20,000 in their joint savings account, paid the balance of the mortgage on the Smith Street property, which was approximately $4,773.00, and used the remaining $4,500.00 to settle other construction bills associated with the Swepsonville property. Next, they bought a travel trailer for $4,000.00, parked it at the Smith Street property, and commenced renovations and improvements on that property, using some of the remaining proceeds to finance this work and for living expenses.

In May of 1982, the parties borrowed $17,700.00 on the Smith Street property and purchased a $13,000 sailboat. In December of that same year, they borrowed an additional $15,389.13 on the Smith Street property and bought an 8.43 acre tract of land in Rockingham County for $5,000.00, as well as a dump truck, a heavy equipment trailer, a backhoe, a tractor and two lots and a trailer in Rockingham County, expending a total amount of $20,620.00.

I

A.   Standard of Review

Our trial courts have broad discretionary powers in domestic law cases. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason, or that its ruling could not have been the result of a reasoned decision. *White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985), *modifying and aff'g*, 64 N.C. App. 432, 308 S.E. 2d 68 (1983). Only when the evidence fails to show *any* rational basis for the distribution ordered by the court will its determination be upset on appeal. *See id.*, 312 N.C. at 778, 324 S.E. 2d at 833. Further, when an appellant contends that the findings of fact are not supported by the evidence, we look to see whether the findings are supported by *any* competent evidence in the record. *See Alexander v. Alexander*, 68 N.C. App. 548, 552, 315 S.E. 2d 772, 776

Nix v. Nix

(1984) (The trial court's findings were not sufficient to support its disposition or to allow the appeals court to determine the basis on which it reached its legal conclusions.); *Talent v. Talent*, 76 N.C. App. 545, 554, 334 S.E. 2d 256, 262 (1985) (The court ignored uncontradicted evidence in classifying and distributing certain jewelry as marital property.).

B.  Equitable Distribution Procedure

In applying G.S. Sec. 50-20, the trial court must first undertake to identify, with specificity, the property owned by the parties. *See Wade v. Wade*, 72 N.C. App. 372, 376, 325 S.E. 2d 260, 266, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985); *Little v. Little*, 74 N.C. App. 12, 327 S.E. 2d 283 (1985). Next, the court must classify each item as either separate or marital property per G.S. Sec. 50-20(b)(1) and (2). *Loeb v. Loeb*, 72 N.C. App. 205, 208-09, 324 S.E. 2d 33, 37, *cert. denied*, 313 N.C. 508, 329 S.E. 2d 393 (1985). There is a presumption, rebuttable by clear, cogent and convincing evidence, that all property acquired by the parties during the marriage is marital property. *Id.*, 72 N.C. App. at 205, 324 S.E. 2d at 38. Property can have a dual nature, and can be classified as part separate and part marital. This approach takes into account the active appreciation of separate property which often results from contributions made by one or both spouses. *See generally*, 72 N.C. App. at 378, 325 S.E. 2d at 268; *Lawrence v. Lawrence*, 75 N.C. App. 592, 595, 331 S.E. 2d 186, 188, *disc. rev. denied*, 314 N.C. 541, 335 S.E. 2d 18 (1985).

After classifying the property as marital, separate or mixed, the court must determine the net value of the property. Net value has been defined as market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. *Alexander*, 68 N.C. App. at 551, 315 S.E. 2d at 775.

Finally, the trial court must make an equal division of the marital property. If, after a careful and clearly articulated consideration of the statutory factors (G.S. Sec. 50-20(c)) the trial court finds that an equal division is not equitable, it may order an unequal but equitable division of the property. *See White*, 312 N.C. at 776-77, 324 S.E. 2d at 832-33. Such an order will be disturbed on appeal only upon the determination that an obvious miscarriage of justice has resulted. *Alexander*, 68 N.C. App. at 552, 315 S.E. 2d at 776.

## II

**[1]** With these principles in mind, we turn to John Nix's assignments of error. His first assignment concerns what he terms the trial court's failure to "allocate and distinguish between 'separate property' and 'marital property' pursuant to G.S. Sec. 50-20(b) in its classification of the status, value and distribution of property in rendering its judgment." The gist of John Nix's contention is that he is entitled to retain as "separate property" the net value of the Swepsonville property at the time of the marriage. He argues that the trial court completely disregarded our holdings in *Wade, Loeb* and *Lawrence* by treating the Swepsonville property as neither entirely separate nor entirely marital property, and by granting him a $4,000.00 credit for his greater contribution to the increase in value of their separate property. We do not agree.

We believe that there was sufficient evidence to support the disposition of the property. The trial court made fifty detailed and specific findings of fact. The court found that John Nix had considerably more separate property before the marriage than Elizabeth Lewis Nix and that each party had directly and substantially contributed to the increase in value of the separate property of the other. Although none of the equitable distribution cases suggest that a spouse should take out of the marriage exactly that which was brought into it, plus at least one-half of the marital estate, John Nix appears to have done just that in this case. He has no reason to complain. He brought to the marriage a piece of semi-improved property with a partially constructed house on it, encumbered by a construction loan. He leaves the marriage with a renovated residence (the Smith Street property), encumbered by personal loans, and one-half of the marital estate, much of which was purchased with the proceeds from the loans on the Smith Street property. In addition, he takes a $4,000.00 credit for the value of his contribution, over and above his ex-wife's, to the increase in value of the separate property of each of them. We cannot say that an obvious miscarriage of justice has resulted from this division.

## III

**[2]** John Nix's next assignment of error is that the trial court improperly determined "net value" pursuant to G.S. Sec. 50-20(c).

He urges us to find that the trial court "disregarded totally the testimony of the defendant" regarding the values of and encumbrances against certain marital property and consequently, that the marital property was substantially overvalued. We find these contentions to be without merit.

The trial court must make findings of fact, based upon competent evidence, to support its conclusions. The trial court, sitting as the trier of fact, is entitled to assess the credibility of the witnesses, and to determine the weight to be afforded their testimony. *See Mayo v. Mayo*, 73 N.C. App. 406, 410, 326 S.E. 2d 283, 286 (1985). When there is conflicting testimony as to value, the trial court may not merely guess at a figure somewhere in between, but may arrive at such a middle figure after considering the factors involved in the various appraisals. After examining the evidence in the record, we conclude that the trial court's findings are supported and that it did not abuse its discretion in valuing the marital assets as it did.

## IV

The next assignment of error is that the trial court made an unequal division of marital property without consideration of the statutory factors enumerated at G.S. Sec. 50-20(c). That the court must consider the statutory factors when it undertakes to make an unequal distribution is clear. *Alexander*, 68 N.C. App. at 551, 315 S.E. 2d at 775; *Loeb*, 72 N.C. App. at 217, 324 S.E. 2d at 42. However, in the case at bar the trial court found, pursuant to the stipulation of the parties, that an *equal* division of all property determined to be marital property would be made. John Nix, in effect, re-argues his first assignment of error—that the trial court should have granted him a larger credit. We have already overruled that assignment of error, and consequently, this one too must fail.

## V

[3]   John Nix's last assignment of error represents yet another attack upon the trial court's finding that he was entitled to a $4,000.00 credit. This time, John Nix takes issue with the value the trial court placed on his separate property interest and argues that the trial court failed to apply the "Source of Funds" theory outlined by this Court in *Wade*.

*Wade,* upon which John Nix so heavily relies, is distinguishable from the case at bar in at least one significant respect. In *Wade,* the separate property of the husband—the unimproved land, and the marital property—the house constructed during the marriage, were still available for distribution at the dissolution of the marriage. In this case, the property had been sold several years before the separation of the parties, and funneled into various projects and purchases. The trial court carefully traced all of these transactions and found that John Nix was entitled to a $4,000.00 credit.

The trial court stated:

The Court in considering all of the evidence and the difficulty of evaluating the percentage or degree of interest that each party thereby acquired in the separate property of the other, finds that by tracing the efforts each did in the improvement of the other's separate property and by the assets purchased as a result of these increases in value, that in order for this Court to equitably divide the marital property that the defendant should be given a credit in the final calculation of the marital property to be divided, since the defendant had substantially more separate property at the time of the marriage and that the defendant did more to improve both his property and the separate property of the plaintiff, and the plaintiff had a relatively little amount of property at the time of marriage and that both of their properties were increased in value by joint efforts.

.  .  .

[T]he Court in considering [the factors set forth in G.S. 50-20(c)] and all of the evidence and in tracing the assets from the original improved property finds it would be just and proper for the defendant to be given a credit of $4,000.00.

We cannot say that the trial court failed to consider the "source of funds" theory or that it abused its discretion, especially in light of the fact that it appears from the record that the trial court undertook to trace, sift and wind its way through the numerous purchases and divestments of the parties, apply the relevant precedent, and make an equitable distribution of the property.

For these reasons, we

Affirm.

Judges WHICHARD and PARKER concur.