RALEIGH WILBUR HARTMAN v. ELSIE H. HARTMAN

No. 8621DC39

(Filed 5 August 1986)

1. **Divorce and Alimony § 30— equitable distribution of marital property—husband's interest in cemetery**

In a proceeding for equitable distribution of marital property, the evidence was sufficient to support the trial court's determination as to the ownership interest held by plaintiff in a cemetery where the court determined that plaintiff owned 1,118 shares of stock and plaintiff's son owned 684 shares of stock; the father served as a conduit for the son's purchase of the stock; plain-

**Hartman v. Hartman**

tiff had the power to transfer only the 1,118 shares of stock; it was never contemplated by anyone involved with the sale of the 684 shares of stock that plaintiff would purchase it and then retain ownership thereof; and the son paid the seller directly for the stock, at which time it was transferred to his name.

**2. Divorce and Alimony § 30— equitable distribution of marital property—husband's interest in cemetery—valuation of stock**

In a proceeding for equitable distribution of marital property the trial court's findings pertaining to the valuation of stock owned by plaintiff were supported by the evidence where the expert testimony and evidence upon which the trial court based its calculations was to the effect that the value of plaintiff's 1,118 shares of stock should be valued as those of a minority interest holder due to his inability to convey a majority of the shares of outstanding stock in the corporation; generally the value of stock interests representing less than control are normally discounted 30 to 50 percent; plaintiff's expert was the only expert who testified on the process of valuing stock held in a closely-held corporation; and the court considered the selling price of the stock in 1981 and 1983, the restrictions on the shares of stock as stated in the corporation's bylaws, the limited marketable capacity of the minority stock of the corporation and the fact that the corporation had never been able to pay substantial dividends.

**3. Divorce and Alimony § 30— equitable distribution of marital property—all of corporate stock awarded to one party—no error**

Due to the nature of the management of a closely-held corporation such as the one in question, there was no abuse of discretion by the trial court in a proceeding for the equitable distribution of marital property in awarding all of the stock in the corporation to one of the parties.

**4. Divorce and Alimony § 30— equitable distribution of marital property—items of greater value awarded to one party—distribution proper**

There was no merit to defendant's contention that she was substantially prejudiced by the court's distribution of marital property because plaintiff was awarded items of property valued at more than twice what the items of property were which were awarded to defendant, since the court, in order to make the distribution equitable, required plaintiff to pay the mortgage on the former homeplace of the parties and required him to make a lump sum payment to defendant.

**5. Deeds § 11; Divorce and Alimony § 30— equitable distribution of marital property—interest of parties in lake house—court's going outside face of deed improper**

The trial court erred in considering parol evidence and determining that the parties to a proceeding for equitable distribution of marital property owned a one-half interest in a lake house and lot rather than a one-third interest, since there were no findings or conclusions which would warrant the trial court's going outside the face of the deed to construe the subject conveyance, and the conveyance was to one individual grantee and two sets of husbands and wives.

Judge WEBB dissenting.

APPEAL by defendant and cross-appeal by plaintiff from *Gatto, Judge.* Judgment entered 4 October 1985 in District Court, FORSYTH County. Heard in the Court of Appeals 3 June 1986.

The parties appeal from a judgment distributing marital property pursuant to the Equitable Distribution Act, G.S. 50-20.

*Morrow & Reavis, by John F. Morrow and Clifton R. Long, Jr., for plaintiff appellant.*

*Petree, Stockton & Robinson, by W. Thompson Comerford, Jr. and Jane C. Jackson, for defendant appellant.*

JOHNSON, Judge.

Plaintiff Raleigh Wilbur Hartman and defendant Elsie H. Hartman were married on 28 June 1947. Two children, Sue Ann and Raleigh Wilbur Hartman, Jr. ("Buddy"), were born of this marriage. On 22 January 1982, the parties separated. At the time of the parties' separation both the parties' children were emancipated. An absolute divorce was entered in Forsyth County District Court on 12 December 1983; pursuant to court order, the equitable distribution claim was severed from the divorce claim for later trial.

DEFENDANT'S APPEAL

The trial court, sitting as the trier of fact, found in pertinent part, the following: Neither the plaintiff nor defendant owned any separate property. At the time of trial defendant was employed at Crestview Memorial Gardens; that plaintiff was employed at Gardens of Memory, Inc. As of the date of the parties' separation, Gardens of Memory, Inc., a closely held corporation in the cemetery business, had 2,568 outstanding shares of common stock. The fair market value of the corporation is approximately $401,407.00. The corporation originally issued 3,250 shares. Plaintiff as an original investor in 1960 was the purchaser of 684 shares and subsequently in January of 1981, plaintiff purchased 434 shares at $40.00 per share from another original investor, J. C. Fulp. Plaintiff owned 1,118 shares of stock free and clear from any individual or legal obligation. The value of plaintiff's stock is $100.00 per share for a total value of $118,000.00. Approximately one year prior to the parties' separation, in early 1981, James C. Fulp and his wife, Dorothy Fulp, went to plaintiff and informed him of their

desire to sell 684 shares of stock in Gardens of Memory, Inc. to plaintiff's son, R. W. Hartman, Jr.; however, they informed plaintiff that they realized that his son was not financially capable to purchase their stock. On 6 January 1981, plaintiff executed a purchase agreement for the Fulps' 684 shares of stock for $30,000.00. The terms of the purchase agreement were $7,500.00 down and that plaintiff execute a promissory note for $22,500.00, secured by a pledge and assignment of stock; that the $22,500.00 note was payable with interest of 12% per annum and was payable in four equal installments of $5,625.00 with the first payment due 6 January 1982. On 18 February 1981, plaintiff and his son, executed an agreement for plaintiff to sell the recently acquired 684 shares of stock to his son with the following terms: $500.00 as a cash down payment, $7,000.00 as a payment due on or before 6 January 1987, and $22,500.00 plus interest of 12% per annum being due and payable in four equal installments of $5,625.00 each, with the first payment due 6 January 1982. This agreement recited that the 684 shares were pledged to the Fulps as security for plaintiff's 6 January 1981 note to the Fulps. Defendant's sister as of 22 January 1982 was the owner of 600 shares of Gardens of Memory, Inc. stock; 165 shares of said corporation's stock was owned by William Huffstetler, II, but in 1983 said stock was sold to plaintiff's son for $40.00 per share.

[1] Defendant first contends that the trial judge erred as a matter of law in determining the ownership interest held by plaintiff in Gardens of Memory, Inc. and in his valuation of plaintiff's stock in said corporation. We disagree.

The standard of our review for domestic law cases, as stated by this Court, is as follows:

Our trial courts have broad discretionary powers in domestic law cases. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason, or that its ruling could not have been the result of a reasoned decision. Only when the evidence fails to show *any* rational basis for the distribution ordered by the court will its determination be upset on appeal. Further, when an appellant contends the findings of fact are not supported by the evidence, we look to see whether the findings are supported by *any* competent evidence in the record.

*Nix v. Nix*, 80 N.C. App. 110, 112, 341 S.E. 2d 116, 118 (1986) (emphasis in original) (citations omitted). Defendant first argues that the conveyance of stock from plaintiff to his son was a "sham" and therefore plaintiff held 1,802 shares of stock, a majority share, not 1,118 shares as the trial court found. By this assertion defendant challenges the value of each share plaintiff owned by virtue of plaintiff being able to sell a majority share, and the value of the stock owned by plaintiff according to the amount of shares (registered in plaintiff's name). Defendant alleges that the evidence presented to the trial court showed that plaintiff exercised control over the disputed stock; and that the stock continued to be registered in plaintiff's name until 1985. Defendant further alleges that the alleged sale of stock by plaintiff to his son cannot withstand our scrutiny. We disagree.

Defendant, in her presentation of evidence, did not establish that the stock sale entered into between plaintiff and the parties' son was fraudulent. The contract has not been voided in any previous action and the legal effect of said document remains intact. The trial court, as alluded to, *supra*, specifically found as fact the following:

> While plaintiff was the title owner of said 684 shares of stock on the date of separation, the plaintiff did have a legal obligation to sell said stock to the son of the parties for the same amount of money that the plaintiff owed for the purchase of said stock; that for this reason, the Court does not place a net value on said 684 shares of stock as the *plaintiff had a legal obligation at the time of separation to sell said stock*, as the plaintiff has sold said stock since the separation pursuant to said legal obligation, and as the stock was sold to the parties' son for the amount the plaintiff owed on said stock at the time of the parties' separation; that the Court further notes that the Court is making the $7,000.00 note from R. W. Hartman, Jr., to the plaintiff a marital asset.

(Emphasis supplied.) As stated earlier, the court found as fact that the reason for the subject sale of stock was that plaintiff wanted his son to become an owner in Gardens of Memory, Inc. The record in the case *sub judice* supports this finding by the court sitting as the trier of fact. Testimony by Mr. Fulp, an original investor who sold the subject stock to plaintiff, was as follows:

Q. Do you know how many shares of stock you all had in the company?

A. 684.

Q. Do you know know [sic] much money you paid for that stock?

A. It was $10 a share. That'd [sic] be $6,840.

Q. All right. Now at some point in time, did you become interested in selling that stock?

A. Yes, I did.

Q. Would you tell us how you became interested in selling the stock?

A. I was having lunch with a mutual friend of mine and the Hartmans, Mr. Bill Witherow, and he and I got to talking business and we drifted off on the cemetery which I was a stockholder in. And I told him I'd be glad to sell my shares and he said that his son and Buddy might be interested in buying it.

Q. And what was this gentleman's name?

A. C. W., Bill Witherow.

Q. All right, and when you say Buddy, who are you referring to?

A. This younger Hartman back there.

Q. Mr. Hartman's son?

A. That's right.

Later in his testimony Mr. Fulp testified with respect to his understanding of the actual stock sale as follows:

Q. Now, the note came from Mr. Hartman. Whose understanding was it—what was your understanding as to who was going to end up with the stock?

A. It was my understanding that—

Mr. Comerford: [defendant's attorney]—

Well, objection, Your Honor.

Q. (Mr. Morrow) [plaintiff's attorney] Well, from your conversation with Mr. Hartman?

THE COURT: Overruled. You may answer.

THE WITNESS: It was my understanding that Mr. Hartman was buying that for Buddy. In fact, he told me he was.

Q. (Mr. Morrow) Can you tell us why you didn't just sign these contracts with Buddy?

A. Buddy didn't have the resources at that time.

Q. In other words, you financed it yourself, didn't you?

A. Yes.

Q. Now, after the $7,500 was paid, the contract and note calls for $5,625 per year plus interest at the rate of 12 percent per annum on the balance of $22,500.

Were those payments made?

A. That's correct.

Q. Who made those payments?

A. Buddy Hartman.

Buddy Hartman testified as follows:

Q. When was the agreement signed?

A. February the 11th, 1981.

Q. Now, prior to signing that agreement, had you had any conversations with your father about that stock and your purchasing of it from Mr. Fulp?

A. Yes, sir, he had come to me and said that J. C. had wanted to sell his stock and that he would like for me to buy that stock, but he knew that I really didn't have the money to do that and that he would be willing to help me make payments that I couldn't make if I would—you know, if I was going to stay at the company and become interested and—and wanted to become a stockholder.

Q. And what did you tell him?

A. I told him that, you know, I knew it would be tough but that if there was any way we could do it that I wanted to buy it.

Buddy Hartman further testified that he was making all payments to J. C. Fulp toward the purchase price as payments became due; that the stock was transferred in January of 1985, after he made the final payment to Mr. J. C. Fulp; and that a $7,000.00 payment which is due in 1987 to be paid to plaintiff. Plaintiff's testimony corroborated the testimony by his son and Mr. Fulp as follows:

Q. (Mr. Morrow) Tell us about the conversation you had with Mr. Fulp concerning this stock.

A. And I said, yes, I would like for Buddy to have your stock if you want to sell it, J. C. And he said, well I think that—you know, that you—you—you run the company, you've done all the work here, and you—you all should have it. Buddy is helping you, he's coming on in the business, and—and that was basically the conversation.

And I said, J. C., I don't have the money to buy all the stock, and Buddy certainly doesn't have it. And he said, well, I don't want all the money. I had rather have it spread out over a period of years. And he—and I asked him what he wanted, and he said $45 a share or something like that. And—and I said, well, I—I'll give you [$]30,000.00 for the whole thing, you know. I think that's the conversation.

The 11 February 1981 agreement between plaintiff and his son for the sale of stock recites the following: "seller hereby agrees to do whatever is necessary to effectuate an assignment and transfer of said 684 shares of stock immediately upon payment in full of the consideration set out in section one hereinabove." We hold that the trial court's findings are supported by sufficient evidence to meet the "*any* competent evidence" standard set forth in *Nix, supra,* at 112, 341 S.E. 2d at 118. Plaintiff entered into a legitimate agreement for the sale of stock to his son approximately one year prior to the parties separation agreement and therefore the trial court was correct in assessing the number of shares owned by plaintiff, which he had the power to transfer. The evidence presented to the trial court supports a

finding that plaintiff owned 1,118 shares of stock for purposes of equitable distribution. Plaintiff merely was a conduit for his son's acquisition of the subject 684 shares of stock. The evidence and the court's findings reveal that it was never contemplated by anyone involved with the sale of the stock that plaintiff would purchase the 684 shares of stock and retain ownership thereof. There was no dissipation of marital assets as defendant contends. The trial court specifically noted that the $7,000.00 note from R. W. Hartman, Jr., to plaintiff was a marital asset. Therefore, any marital asset funds expended by plaintiff in his role as a conduit for the sale of stock to R. W. Hartman, Jr. will be recouped.

[2]   Defendant also argues that the trial court's findings, pertaining to the valuation of the stock owned by plaintiff, are not supported by the evidence. Defendant's argument on the valuation of the stock is, as discussed *supra*, erroneously premised on plaintiff being a majority shareholder of Gardens of Memory, Inc. The trial court made the following pertinent findings of fact:

> Xi   Mr. William Etheridge was considered by the Court to be an expert in his chosen field as a Certified Public Accountant; that furthermore, Mr. Etheridge has training and experience in valuing shares of stock in small, privately held corporations; that from the evidence of Mr. Etheridge, the court finds that the minority stock of Gardens of Memory, Inc., has a limited marketable capacity; that furthermore, due to the fact that said corporation has never been able to pay substantial dividends, the court finds from the testimony of Mr. Etheridge, that a discount factor must be applied by the Court in determining the value of the plaintiff's 1,118 shares of stock;

> Xii   The court finds that the value of all the shares in the corporation, if they could be sold as a whole, is $156 per share; that this sum is determined by dividing $401,407 (the value as determined by defendant's expert witness to be the fair market value of the corporation) by 2,568, the total number of outstanding shares of stock;

> Xiii   The Court finds that a discount factor of 36% must be applied to the value of stock as a whole due to the fact that the plaintiff did not have the power and ability to sell a majority interest in the corporation at the time of the separa-

tion and the further fact that said plaintiff still does not have the power and ability to sell a majority interest in said corporation; that 36% of $156 is $56.16; that the Court further finds the value of the plaintiff's 1,118 shares of stock at the time of separation to be $100 per share at $118,800.

(Emphasis supplied.) Bearing in mind the principles of *Nix, supra,* and the cases cited therein, we hold that the trial court's findings are supported by competent evidence and we further hold that defendant has failed to show that the trial court's actions were "manifestly unsupported by reason, or that its ruling could not have been the result of a reasoned decision." *Nix, supra,* at 112, 341 S.E. 2d at 118.

The trial court in the capacity of trier of fact "is entitled to assess the credibility of the witnesses, and to determine the weight to be afforded their testimony." *Nix, supra,* at 115, 341 S.E. 2d at 119, *citing Mayo v. Mayo,* 73 N.C. App. 406, 410, 326 S.E. 2d 283, 286 (1985). The transcript of the proceedings is replete with testimony pertaining to the value of the subject stock. Defendant even testified that her husband had told her a year prior to their separation that the stock was worth $100.00 per share. There were several sales of stock in Gardens of Memory, Inc. for $40.00 per share prior to and after the parties separated. The trial court indicated in its findings and defendant testified "There had been no dividends paid since like 1977." The parties' son also testified that he was offered the opportunity to purchase stock from Harvey Huffstetler for $30.00 per share.

The expert testimony and evidence upon which the trial court based its calculations was to the effect that the value of plaintiff's 1,118 shares of stock should be valued as those of a minority interest holder due to his inability to convey a majority of the shares of outstanding stock in Gardens of Memory, Inc.; that generally the value of stock interests representing less than control are normally discounted 30 to 50 percent; that restricted securities bear a discount rate of as much as 90 percent with a large number of stocks being discounted in the range of 50 to 70 percent. Plaintiff's expert was the only expert who testified on the process of valuing stock held in a closely held corporation. The expert explained the basis for his testimony and testified about relevant factors which may be considered in the valuation

of stock held in a closely held corporation. Two factors which directly affect the marketability of said stock were dividend payments and liquidity of assets. There was evidence presented to the trial court that dividend payments had not been paid since 1977 and that Gardens of Memory, Inc. had experienced cash flow difficulties. In the final analysis, the expert testified that the valuation of a minority share of stock in a closely held corporation is a very subjective process. Minority shareholders lack influence to affect the liquidation to convert the underlying assets to cash. The expert testified that in his expert opinion the appropriate discount factor should be at least 50 percent. The trial court in the case *sub judice* discounted the value of the stock as a whole using the fair market value of the corporation as determined by *defendant's* expert witness. The trial court made detailed findings with respect to testimony by the parties' expert witnesses. The court considered, *inter alia*, the following in determining the value of the subject stock: (1) the selling price of the stock in 1981 and 1983; (2) the restrictions on the shares of stock as stated in the Gardens of Memory, Inc. Bylaws; (3) the minority stock of Gardens of Memory, Inc. has a limited marketable capacity; and (4) Gardens of Memory, Inc. has never been able to pay substantial dividends. For nearly four months the trial court labored on the disputed findings in this disputed order of equitable distribution. This order reflects a detailed sifting of the evidence wherein the trial court was called upon to decide the correctness of capitalization rates, an Inwood coefficient, and a franchise value. After extensive review of the record on appeal we find that there is competent evidence to support the trial court's valuation of plaintiff's stock at $118,000.00. *Nix, supra.* We note that in April of 1981, 682 shares of stock were repurchased by the corporation, as treasury stock, at $40.00 per share.

[3] Defendant next argues that it was error for the trial court to distribute the 1,118 shares of stock in Gardens of Memory, Inc. to plaintiff. We disagree. The trial court has broad discretion in the division of marital property. *White v. White*, 64 N.C. App. 432, 308 S.E. 2d 68 (1983), *modified and affirmed*, 312 N.C. 770, 324 S.E. 2d 829 (1985). This Court in *White, supra*, stated the following:

> That our legislature intended to grant courts wide discretion in dividing marital property is indicated by (1) the language

of G.S. 50-20(c); (2) the existence of the twelve enumerated factors in the statute which the court is to consider in determining what will be an equitable division; (3) the existence of the catchall factor in G.S. 50-20(c)(12) whereby the court is permitted to consider any other factor which the court finds to be just and proper; and (4) the lack of any indication as to the quantum of evidence on each of the factors required to overcome the presumption.

*Id.* at 438, 308 S.E. 2d at 72. G.S. 50-20(e) states that if impractical the trial court does not have to make a distribution of all or portions of the marital property in kind. Due to the nature of the management of a closely held corporation such as Gardens of Memory, Inc., there is no abuse of discretion by the trial court in the case *sub judice* to award all of the stock in said corporation to one of the parties. The trial court heard testimony of existing internal struggles among stockholders of Gardens of Memory, Inc. It was within the trial court's discretion to award defendant marital property to achieve an equal and equitable distribution.

Defendant next contends that the trial court failed to accomplish an equal or equitable distribution. The first argument forwarded by defendant is that the court improperly neglected to consider the relative incomes of the parties as a factor affecting the equitable distribution of marital property. We disagree.

The trial court specifically noted in its findings that it "considered all of the evidence presented by the parties pertaining to N.C.G.S. 50-20(c)(1-12) in making its determination that an *equal division* of marital properties is equitable . . ." (emphasis supplied). Findings five and six reflect the trial court's findings on the parties' income. The trial court made a determination that its findings support an equal distribution and we hold there was a rational basis therefor. *White, supra; Loeb v. Loeb*, 72 N.C. App. 205, 324 S.E. 2d 33 (1985).

Defendant argues that it was inequitable for the court to distribute the note from Gardens of Memory, Inc. to her and distribute the note from Buddy Hartman, Jr. to plaintiff. We disagree. Basically, defendant attempts to reargue the validity of the sale of stock from plaintiff to Buddy Hartman, Jr. Also, defendant questions her ability to collect payment due on the $30,000.00 note from Gardens of Memory, Inc. From our review of the record

we cannot say that the trial court abused its discretion in distributing the $7,000.00 and $30,000.00 notes.

[4] Defendant's final argument with respect to the trial court's distribution of the property is that she was substantially prejudiced and that said distribution violated the statutory requirement that the distribution be equal or equitable. The items of property awarded to plaintiff were valued at $177,332.00. The items of property awarded to defendant were valued at $78,-700.00. In order to make the distribution equitable the trial court ordered the following:

> (19) As the items of property awarded to the plaintiff exceed in value the items of property awarded to the defendant by $98,632, it is equitable that the defendant be paid a distributive award by the plaintiff in the total sum of $49,316 as follows:
>
> A. Plaintiff should pay the $34,300, 14%, mortgage on the former homeplace of the parties in Walkertown, North Carolina, as said mortgage becomes due and payable; that it is recognized by the Court that, due to the age of plaintiff, the plaintiff has a limited borrowing power with lending institutions and therefore it is practical and equitable for said plaintiff to pay the $34,300 to the defendant by making the before mentioned mortgage payments;
>
> B. By paying to the defendant $15,016 within 90 days of the date of the execution of this order. . . .

Defendant does not present any new contentions in support of her final challenge to the order of distribution. Our review of the order reveals an extremely complex, detailed order setting forth the trial court's rational basis for distribution of the parties' marital property and defendant has not shown any abuse of discretion by the trial court. *Nix, supra; White, supra.*

Defendant's final argument is that the trial court abused its discretion in denying her discovery requests. We disagree. On 24 February 1984, defendant served 50 interrogatories on plaintiff. On 4 April 1984, plaintiff objected to questions twenty-four (24) through thirty-one (31) and moved the court for a protective order. In support of his motion plaintiff averred that "it would be a violation of his duties as officer of the corporation to reveal the

requested information without a directive from the stockholders and/or the Board of Directors." Plaintiff further stated that defendant works for a competitor of the corporation and that the requested information could be used in competition with Gardens of Memory, Inc. Defendant did not object to the timeliness of plaintiff's objections or motion. The trial court, without objection by defendant, in an 18 April 1984 order, directed plaintiff not to answer interrogatories twenty-four (24) through thirty-one (31), but allowed defendant to resubmit said interrogatories upon a showing by defendant that the information requested was necessary to the issues being decided. Defendant failed to show the necessity of interrogatories pertaining to Gardens of Memory, Inc.'s payroll and never resubmitted said interrogatories. Since defendant did not raise lack of timeliness for the trial court's consideration, it cannot be raised for the first time for us to consider. *See Little v. Rose*, 285 N.C. 724, 208 S.E. 2d 666 (1974). Moreover, protective orders are, pursuant to Rule 26(c), N.C. Rules Civ. P., within the trial court's discretion and will only be disturbed for an abuse of discretion. Defendant has failed to establish such an abuse of discretion. *Williams v. State Farm Mutual Automobile Insurance Co.*, 67 N.C. App. 271, 312 S.E. 2d 905 (1984).

Defendant also argues that the trial court abused its discretion by allowing plaintiff's 6 November 1984 motion for a protective order, objection to depositions, objection to interrogatories, and objection to request for production of documents. Defendant contends that "her ability to properly prepare and present her case was irreparably prejudiced by the trial court's order." The record herein does not bear out such a contention. It was within the trial court's discretion to issue a protective order upon plaintiff's motion. Plaintiff, in his motion averred, *inter alia*, that defendant was requesting additional discovery for purposes of harassment. The case was calendared for trial the week of October 15, nearly a month prior, but the entire day was spent in settlement negotiations. We find no abuse of discretion by the trial court. *Williams, supra.*

## PLAINTIFF'S CROSS-APPEAL

[5] Plaintiff brings forward three Assignments of Error pertaining to the trial court's findings and conclusions on plaintiff and defendant's ownership interests in a house and lot located at

Baden Lake, Montgomery County, North Carolina. Plaintiff contends that the trial court erred as a matter of law in making findings of fact that plaintiff and defendant had a one-half (½) ownership interest in said property when the deed to said property contained a conveyance of a one-third (⅓) ownership interest of said property to plaintiff and defendant.

This Court has stated the construction of conveyances contained in a deed as follows:

> It is well settled that except in cases of fraud, mistake, or undue influence, parol trusts or agreements will not be set up or engrafted in favor of the grantor upon a written deed conveying to the grantee the absolute title, and giving clear indication on its face that such title was intended to pass. Testimony tending to show an oral agreement in direct conflict with the deed is incompetent.

*Rourk v. Brunswick County*, 46 N.C. App. 795, 796-97, 266 S.E. 2d 401, 403 (1980). The conveyance contained in the granting clause of the deed to the Baden Lake property conveyed ownership interests in the property to "Raleigh W. Hartman, Sr. & Wife, Elsie H. Hartman, Donald T. Shafer & Wife, Sue Ann Shafer, and Raleigh W. Hartman, Jr." The proposition for construing this conveyance was stated in *In Re Gardner*, 20 N.C. App. 610, 202 S.E. 2d 318 (1974), as follows:

> 'If an estate be given to A., B. and C., and A. and B. are husband and wife, nothing else appearing, they will take a half interest in the property and C. will take the other half.'

*Id.* at 619, 202 S.E. 2d at 324, *quoting, Davis v. Bass*, 188 N.C. 200, 205, 124 S.E. 566, 569 (1924). The trial court did not construe the subject conveyance in the manner set forth in *Gardner, supra*. The trial court considered parol evidence and found that plaintiff and defendant were one-half (½) owners of the house and lot located at Baden Lake. There are no findings or conclusions that would under *Rourk, supra*, warrant the trial court to go outside the face of the deed to construe the subject conveyance. The conveyance was unambiguous as a matter of law. The conveyance was to one individual grantee and two sets of husbands and wifes whereby each husband and wife were tenants by the entirety as to each other and tenants in common with the other grantees.

Thus, plaintiff and defendant were conveyed as tenants by the entirety a one-third undivided interest in the Baden Lake property. The trial court found that the fair market value of the property was $108,000.00 and divided that amount in half for a $54,000.00 gross value the parties owned. The trial court should have arrived at a one-third interest of $36,000.00. Therefore, this trial court should recalculate the parties' interest in the Baden Lake property in a manner not inconsistent with this opinion and reflect that recalculation in its order of equitable distribution. In all other aspects the order stands as is.

Affirmed in part, reversed in part and remanded.

Judge WHICHARD concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent. It appears to me that the court used evidence which placed a low valuation on the stock in Gardens of Memory, Inc. It then gave all the stock to the plaintiff. I do not believe we should hold this was an equitable distribution.