LEIGH W. WALTER, Plaintiff v. JAMES M. WALTER, Jr., Defendant

No. COA01-217

(Filed 16 April 2002)

**1. Divorce— equitable distribution—home—tenants by entiety—separate property part of purchase price—presumption of donative intent**

The entire value of a home acquired by the parties as tenants by the entirety during the marriage and before the date of separation must be classified as marital property, even though defendant husband had applied $32,452.50 of his separate property to the purchase of the home, where defendant offered no evidence that he had no intention of making a gift of the $32,452.50 to the marital estate and thus failed to rebut the presumption of donative intent provided by N.C.G.S. § 50-20(b)(2).

**2. Divorce— equitable distribution—classification—money found in safe of marital home—separate property**

The trial court did not err in an equitable distribution case by classifying the $11,000 found in the safe in the marital home as defendant husband's separate property where the husband offered testimony that the $11,000.00 came from the sale of

clocks that had been his separate properties, the wife acknowledged the original $11,000.00 as the husband's separate property but testified that funds from this source were used for marital purposes and replaced with marital funds, and the trial court implicitly resolved this conflicting testimony in the husband's favor.

### 3. Divorce— equitable distribution—distributional factor— wasting or converting marital assets

The trial court erred in an equitable distribution case by finding as a distributional factor that plaintiff wife wasted or converted marital assets by her post-separation misconduct in removing truckloads of property from the marital home where the parties stipulated that the items removed by plaintiff had a value of $190,000.00; the trial court found the items to be marital property and distributed them to plaintiff, assigning thereto the stipulated value; and the marital estate was thus not deprived of any property. N.C.G.S. § 50-20(c).

### 4. Divorce— equitable distribution—denial of credits—no abuse of discretion

The trial court in an equitable distribution case did not abuse its discretion in denying defendant husband credits for post-separation payments from separate funds for monthly mortgage obligations secured by a deed of trust on an office building, property taxes on the office building, the parties' joint income tax obligations, and the cost of repairs to a house where the office building, the house, and all the marital debt were distributed to defendant.

### 5. Appeal and Error— preservation of issues—failure to object

Although defendant husband contends in an equitable distribution case that the trial court erred by adopting the valuation given by plaintiff's expert regarding defendant's oral and maxillofacial surgery practice, defendant failed to preserve this issue for appeal; because: (1) defendant failed to object to the expert's opinion, and (2) defendant failed to object at trial to the valuation methodology utilized by the expert or its application to the facts of this case.

Appeals by defendant and plaintiff from judgment and order dated 4 April 2000 by Judge Chester C. Davis in Forsyth County District Court. Heard in the Court of Appeals 29 January 2002.

*Gatto Law Offices, by Joseph J. Gatto, and Bell, Davis & Pitt, P.A., by Robin J. Stinson, for plaintiff-appellant.*

*White and Crumpler, by G. Edgar Parker, for defendant-appellant.*

GREENE, Judge.

James M. Walter, Jr. (Defendant) and Leigh W. Walter (Plaintiff) separately appeal an equitable distribution judgment and order dated 4 April 2000.

On 21 August 1996, Plaintiff filed a complaint seeking, in pertinent part, an equitable distribution of marital property. Evidence at the equitable distribution hearing established Plaintiff and Defendant were married on 26 September 1981, separated on 21 August 1996, and divorced on 14 May 1998. No children were born of the marriage. At the time of their marriage, Defendant was employed as an associate oral surgeon with a partnership practice. Shortly following his marriage to Plaintiff, Defendant became a sole practitioner and opened his own practice of oral and maxillofacial surgery (the Practice). Plaintiff contributed to the Practice by assuming the responsibilities of an office manager.

Between 21 and 22 August 1996, after the time of the parties' separation, Plaintiff and a number of helpers were observed removing several truckloads of property from the parties' marital home. When Defendant returned from a fishing trip and saw the house, he observed that: "She took basically everything. Everything[] [is] gone."

On 16 September 1999, the parties entered into a stipulation regarding the items Plaintiff had taken from the marital home between 21 and 22 August 1996. The stipulation provided that for the purpose of equitable distribution, these items would be distributed to Plaintiff at a value of $190,000.00.[1] The stipulation further stated that

_____

1. While the stipulation does not specifically state that the $190,000.00 was the date-of-separation value, we accept it as such. The trial court was required to value the marital property on the date of separation, *see* N.C.G.S. § 50-21(b) (1999), and neither party suggests the $190,000.00 represents the value at some other point in time or that the property decreased in value between the date of separation and the date of distribution.

it would not constitute an admission by Plaintiff that she removed or converted the items at any time or maintained possession of or control over them since the date of separation.

Defendant offered testimony and Plaintiff stipulated that Defendant had applied $32,452.50 of his separate property in addition to marital funds for the purchase of a house on Meadowbrook Road (the Meadowbrook home) that the parties had bought during their marriage and to which they took title as tenants by the entirety. Defendant further testified that $11,000.00 in cash kept in a safe in the marital home was his separate property derived from his pre-marital business of selling antique British grandfather clocks. This money remained untouched during the course of the marriage as Defendant considered it a cash reserve. Plaintiff, on the other hand, claimed the cash was used periodically over the course of their marriage for marital purposes and subsequently replaced and should therefore be considered marital property.

Defendant used his separate funds during the post-separation period but prior to the date of equitable distribution to pay for: homeowners insurance, maintenance, and other expenses with respect to the Meadowbrook home and another house that had been purchased during the marriage (the Yadkin house); the 1996 through 1999 property taxes and the mortgage on a Maplewood Avenue office building (the Maplewood office); and the parties' joint federal and state income taxes.

Defendant offered the expert testimony of Loyd R. Daniel (Daniel) and Stanley L. Pollock (Pollock) regarding the valuation of the Practice. Plaintiff offered the expert testimony of Robert N. Pulliam (Pulliam). Pulliam valued the Practice on the date of separation at $1,131,000.00. His testimony and written report were admitted into evidence without objection.

In an equitable distribution judgment and order dated 4 April 2000, the trial court found "all three of the experts presented by . . . Plaintiff and . . . Defendant qualif[ied] as experts in the area of the valuation of professional practices." The trial court adopted Pulliam's valuation of the Practice, which it found to be "not only based on accounting principles[] but also . . . grounded in solid appraisal practice and common sense" and assigned a date-of-separation value of $1,131,000.00 to the Practice. The trial court further found in finding of fact number LIV that:

A. The "Cash in Safe" is determined to be the separate property of . . . Defendant at a fair market value on the date of separation of $11,000.00.

. . . .

D. [P]ursuant to [the parties'] Stipulation[,] . . . Defendant made a contribution of $32,452.50 of his separate property to the acquisition of and improvements to [the Meadowbrook home]. . . . Defendant has established through clear, cogent and convincing evidence that he had no intention of making a gift of his separate property to the marital estate, although said property was deeded to the parties as tenants by the entiret[y]. The Court finds therefore that of the date of separation value of $145,000.00[,] . . . $32,452.50 is . . . Defendant's separate property and that the remaining sum of $112,547.50 is marital property, which is distributed to Defendant.

The trial court distributed the Meadowbrook home, the Yadkin house, the Maplewood office, and the marital debt to Defendant. The trial court granted Defendant a credit in the amount of $4,494.87 resulting from insurance paid on marital property, including homeowners insurance for the Meadowbrook home and the Yadkin house, and a credit in the amount of $4,950.00 for maintenance on the Meadowbrook home. The trial court denied Defendant a credit for post-separation mortgage payments on the Maplewood office because the office had been distributed to Defendant, "therefore providing him with full credit for the principal reduction to the mortgage balance subsequent to the date of separation." The trial court also denied Defendant credit for post-separation property tax payments on the Maplewood office for the years 1996 through 1999. The trial court further denied Defendant's request for credit in respect to the payment of joint income taxes following the parties' separation because "the items for which Defendant was requesting credit were included as marital debt under Schedule I of the Pre-Trial Order" and assigned to Defendant. Finally, the trial court denied Defendant credit for post-date-of-separation repairs and improvements to the Yadkin house, which had been awarded to Defendant, as there was "no evidence that . . . Plaintiff benefitted in any respect from . . . Defendant's acquisition of this property, nor [was] there any evidence that . . . Defendant was involuntarily forced to make repairs and improvements to the property following the parties' separation."

WALTER v. WALTER

[149 N.C. App. 723 (2002)]

Among the distributional factors listed by the trial court, the trial court considered "the acts of . . . Plaintiff in wasting, neglecting and converting marital property between the date of separation and the trial of this matter, including those assets set out in the written [s]tipulation by the parties" on 16 September 1999. The trial court referred to these acts as "the most significant distributional factor." As a result, the trial court concluded that an equal distribution of the marital property would be inequitable and awarded Defendant 54.5% of the net marital estate. The assets covered by the 16 September 1999 stipulation in the amount of $190,000.00 were deemed part of the marital estate and distributed to Plaintiff.

---

The issues are whether: (I)(A) Defendant rebutted the presumption of a gift of $32,452.50 of his separate property to the marital estate; (B) the $11,000.00 cash in the safe was properly classified as Defendant's separate property; (II)(A) the evidence supports the finding of a distributional factor that Plaintiff wasted or converted marital assets; (B) the trial court erred in its allocation of credits; and (III) Defendant properly preserved his right to argue the trial court erred in adopting Pulliam's valuation of the Practice.

I

*Classification*

A

*Meadowbrook Home*

[1] Plaintiff claims the Meadowbrook home is marital property while Defendant contends it is partly marital and partly his separate property.[2] This property was acquired by the parties as tenants by the entirety during the marriage and before the date of separation, and Defendant applied $32,452.50 of his separate monies to the purchase price.

As the property was acquired by the parties during the marriage, before the date of separation, and was owned by them on the date of separation, Plaintiff met her burden of showing the property was marital. *See* N.C.G.S. § 50-20(b)(1) (1999). Defendant contends he acquired a portion of the Meadowbrook home in exchange for his separate monies and thus, pursuant to the "exchange provision" of

---

2. The burden is on the party claiming property to be marital, separate, or divisible to prove that it is so. *See Atkins v. Atkins*, 102 N.C. App. 199, 206-7, 401 S.E.2d 784, 787-8 (1991).

**WALTER v. WALTER**

[149 N.C. App. 723 (2002)]

N.C. Gen. Stat. § 50-20(b)(2), has satisfied his burden. Plaintiff, relying on *McLean v. McLean*, 323 N.C. 543, 546, 374 S.E.2d 376, 378 (1988), contends the transfer implicates the "interspousal gift provision" of section 50-20(b)(2), and thus, Defendant made a gift of his $32,452.50 to the marital estate. The titling of the property in the entireties does indeed raise a presumption of donative intent, implicating the "interspousal gift provision"; however, it is rebuttable by clear and convincing evidence. *McLean*, 323 N.C. at 546, 374 S.E.2d at 378.

In this case, the trial court found Defendant offered "clear, cogent and convincing evidence that he had no intention of making a gift" of the $32,452.50 to the marital estate. Defendant points to no such evidence[3] in his brief, *see* N.C.R. App. P. 28(b)(5) (appellate briefs shall contain "all material facts . . . supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits"); *see also Naddeo v. Allstate Ins. Co.*, 139 N.C. App. 311, 316, 533 S.E.2d 501, 504 (2000) ("[a]ppellate judges find such references invaluable in directing the court's attention to the pertinent portions of the record"), nor can we find any evidence in the record to support the trial court's finding of fact. Because the trial court's finding was not supported by competent evidence, it was in error. *See Nix v. Nix*, 80 N.C. App. 110, 112, 341 S.E.2d 116, 118 (1986) (findings made by the trial court must be supported by competent evidence). Accordingly, the entire value of the Meadowbrook home must be classified as marital property and the trial court's order to the contrary is reversed. Defendant is, as a result of this holding, entitled to have the trial court consider the gift of his separate property to the marital estate as a distributional factor. *See Collins v. Collins*, 125 N.C. App. 113, 116, 479 S.E.2d 240, 242, *disc. review denied*, 346 N.C. 277, 487 S.E.2d 542 (1997). The weight, if any, assigned to this factor is within the discretion of the trial court. *See Khajanchi v. Khajanchi*, 140 N.C. App. 552, 564, 537 S.E.2d 845, 853 (2000).

B

*Cash Reserve*

[2] Plaintiff argues the $11,000.00 found in the safe in the marital home was marital property. Defendant contends it was properly classified as his separate property.

---

3. Evidence that a gift to the marital estate was not intended "can be gathered from 'circumstances which led to the execution' of the deed and the parties' action after execution of the deed," such as the donor spouse's continued treatment of the

At trial, Defendant offered testimony that the $11,000.00 came from the sale of clocks that had been his separate properties.[4] Plaintiff acknowledged the original $11,000.00 as Defendant's separate property but testified funds from this source were used for marital purposes and replaced with marital funds.[5] In determining that the $11,000.00 in cash is Defendant's separate property, it appears the trial court implicitly resolved this conflicting testimony in Defendant's favor. As there was competent evidence in the record to support this determination, the trial court committed no error in classifying the $11,000.00 as Defendant's separate property. See Nix, 80 N.C. App. at 112, 341 S.E.2d at 118.

## II

### Distribution

### A

### Distributional Factors

[3] In determining whether an equal distribution of marital assets is equitable, the trial court is to consider, as a distributional factor, the post-separation "[a]cts of either party to . . . waste, neglect, devalue or convert the marital property." N.C.G.S. § 50-20(c)(11a) (1999). Plaintiff's removal of truckloads of marital property from the marital home immediately pursuant to the parties' separation constituted marital misconduct. Nevertheless, marital misconduct, consistent with Smith v. Smith, 314 N.C. 80, 87, 331 S.E.2d 682, 687 (1985), only supports a distributional factor if it has an economic effect on the marriage.[6] See also Coleman v. Coleman, 89 N.C. App. 107, 109-10,

---

property as his separate property following the conveyance. Lawrence v. Lawrence, 100 N.C. App. 1, 18, 394 S.E.2d 267, 275-76 (1990) (Greene, J., concurring in the result). Competent evidence also includes the donor spouse's intent, expressed at some point in time, not to make a gift of the property to the marital estate. Id.

4. If this testimony is believed, the exchange provision of section 50-20(b)(2) would require classification of the cash derived from the sale of the clocks as Defendant's separate property.

5. Had the $11,000.00 cash been replaced entirely with marital funds, it would have lost its separate property status. If replaced in part by marital funds, the replaced part would constitute marital property, with the other part retaining its separate property status. The commingling of the funds, in this instance, would not transmute the separate property into marital property as long as the party claiming a portion of the funds to be separate would be able to trace the initial amount deposited to the balance existing on the date of separation. See Fountain v. Fountain, 148 N.C. App. 329, 334, 559 S.E.2d 25, 29 (2002).

6. Marital misconduct that has no resulting economic impact may nonetheless have other consequences. See N.C.G.S. § 50-21(e) (1999) (spouse can be sanctioned for

365 S.E.2d 178, 180 (1988) (misconduct during the marriage that dissipates or reduces the value of the marital assets for non-marital purposes can be considered as a distributional factor). Accordingly, marital property is wasted, neglected, devalued, or converted only if it is, at the time of the distribution, either not available for distribution or has, as a result of a spouse's acts, decreased in value from its date of separation value. *Id.*; *see Smith*, 314 N.C. at 87, 331 S.E.2d at 687 (only acts or circumstances affecting the marital economy are properly considered as distributional factors).

In this case, the parties stipulated the items removed by Plaintiff from the marital home between 21 and 22 August 1996, after the time of separation, had a value of $190,000.00. The trial court found the items to be marital property and distributed them to Plaintiff, assigning the property the stipulated value. Thus, the marital estate was not deprived of any property.[7] It follows, the trial court erred in treating Plaintiff's post-separation removal of the property from the marital home as a distributional factor under section 50-20(c)(11a).

## B

### *Credits*

[4] A spouse is entitled to some consideration, in an equitable distribution proceeding, for any post-separation payments made by that spouse (from non-marital or separate funds) for the benefit of the marital estate. *Edwards v. Edwards*, 110 N.C. App. 1, 11, 428 S.E.2d 834, 838, *disc. review denied*, 335 N.C. 172, 436 S.E.2d 374 (1993). Likewise, a spouse is entitled to some consideration for any post-separation use of marital property by the other spouse. *Becker v. Becker*, 88 N.C. App. 606, 607-08, 364 S.E.2d 175, 176-77 (1988). To accommodate post-separation payments, the trial court may treat the payments as distributional factors under section 50-20(c)(11a), N.C.G.S. § 50-20(c)(11a), or provide direct credits for the benefit of the spouse making the payments, *see Hendricks v. Hendricks*, 96 N.C. App. 462, 467, 386 S.E.2d 84, 87 (1989), *disc. review denied*, 326

the willful obstruction of an equitable distribution proceeding); N.C.G.S. § 50-20(i) (1999) (spouse can be directed to pay for costs incurred for the return of the other spouse's separate property); N.C.G.S. § 1A-1, Rule 34(a) (1999) (property can be subject to inspection for the purpose of inventory and valuation).

7. If Plaintiff had, for example, expended marital funds to remove the property from the residence, the removal would have had some economic impact on the marital estate and to this extent would have been properly considered as a distributional factor. There is, however, no evidence in this case that marital funds were expended to remove the property from the residence.

N.C. 264, 389 S.E.2d 113 (1990). With regard to post-separation use of marital property, the trial court may treat the use as a distributional factor under N.C. Gen. Stat. § 50-20(c)(12), *see Becker*, 88 N.C. App. at 607-08, 364 S.E.2d at 176-77, or place some value on the use and provide a direct credit for the benefit of the spouse who did not use the property. If the property is distributed to the spouse who did not have the post-separation use of it or who did not make post-separation payments relating to the property's maintenance (i.e. taxes, insurance, repairs), the use and/or payments must be considered as either a credit or distributional factor. *See Loving v. Loving*, 118 N.C. App. 501, 505-06, 455 S.E.2d 885, 888 (1995) (spouse not receiving the marital debt who makes some payment on the marital debt after the date of separation and before equitable distribution is entitled to either a reimbursement from the other spouse, a credit, or an upward adjustment in the percentage distribution of the marital properties); *see also Hendricks*, 96 N.C. App. at 467, 386 S.E.2d at 87 (awarding credit to spouse for making post-separation payments on mortgage for house distributed to other spouse). If, on the other hand, the property is distributed to the spouse who had the post-separation use of it or who made post-separation payments relating to its maintenance, there is, as a general proposition, no entitlement to a credit or distributional factor. Nonetheless, the trial court may, in its discretion, weigh the equities in a particular case and find that a credit or distributional factor would be appropriate under the circumstances. *See Edwards*, 110 N.C. App. at 13, 428 S.E.2d at 840 (trial court in best position to determine the most equitable treatment of post-separation payments of marital debt).

In this case, the trial court denied Defendant credits for post-separation payments (from non-marital or separate funds) of: (1) monthly mortgage obligations secured by a deed of trust on the Maplewood office, (2) property taxes due on the Maplewood office, (3) the parties' joint income tax obligations, and (4) cost of repairs to the Yadkin house. The trial court granted Defendant credits for homeowners insurance paid on the Meadowbrook home and the Yadkin house and maintenance expenditures on the Meadowbrook home. As the Maplewood office, the Yadkin house, and all the marital debt were distributed to Defendant, it was within the trial court's discretion to either allow or deny Defendant the requested credits, and we find no abuse in the trial court's exercise of its discretion.

WALTER v. WALTER

[149 N.C. App. 723 (2002)]

## III

### *Valuation of the Practice*

[5] In an equitable distribution proceeding, the trial court is to determine the net fair market value of the property based on the evidence offered by the parties.[8] *Carlson v. Carlson*, 127 N.C. App. 87, 91, 487 S.E.2d 784, 786, *disc. review denied*, 347 N.C. 396, 494 S.E.2d 407 (1997). There is no single best method for assessing that value, *Poore v. Poore*, 75 N.C. App. 414, 419, 331 S.E.2d 266, 270, *disc. review denied*, 314 N.C. 543, 335 S.E.2d 316-17 (1985), but the approach utilized must be "sound," *id.* at 422, 331 S.E.2d at 272. In other words, the trial court must determine whether the methodology underlying the testimony offered in support of the value of a marital asset is sufficiently valid and whether that methodology can be properly applied to the facts in issue. *State v. Goode*, 341 N.C. 513, 527, 461 S.E.2d 631, 639 (1995) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469 (1993)). A party believing the methodology used by a witness is not valid or, if valid, is not properly applied to the facts at issue, has an obligation to object to its admission. *See* N.C.G.S. § 8C-1, Rule 103(a)(1) (1999). If a timely objection is not lodged at trial, it cannot be argued on appeal that the trial court erred in relying on this evidence in determining the value of the asset at issue. *See* N.C.R. App. P. 10(b)(1); *State v. Lucas*, 302 N.C. 342, 349, 275 S.E.2d 433, 438 (1981) (admission of evidence without an objection is "not a proper basis for appeal").

In this case, Plaintiff offered the testimony of Pulliam, who was qualified as an expert in the area of the valuation of professional practices.[9] He gave his opinion as to the value of the Practice, and Defendant offered no objection to that opinion, nor did Defendant object to the methodology utilized in reaching the opinion. On appeal, Defendant argues the methodology used by Pulliam was flawed and thus the trial court could not rely on it for the purpose of determining value. No objection was entered at trial to the valuation methodology utilized by Pulliam or its application to the facts of this case. Thus, Defendant is precluded from challenging the trial court's valuation findings based on this methodology on the ground that it failed to "reasonably approximate[] the net value of the [asset]."

---

8. "[A] witness qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony as to the value of an asset. N.C.G.S. § 8C-1, Rule 702(a) (1999).

9. Defendant does not contest the qualification of Pulliam as an expert.

*Fountain*, 148 N.C. App. at 338, 559 S.E.2d at 32. Accordingly, Defendant's assignments of error regarding the valuation of the Practice are overruled.[10]

*Summary*

In summary, (I)(A) the trial court erred in classifying the $32,452.50 payment made by Defendant on the Meadowbrook home as his separate property; (B) the trial court properly classified the $11,000.00 found in the safe in the marital home as Defendant's separate property; (II)(A) the trial court erred in finding as a distributional factor that Plaintiff wasted or converted marital assets; (B) the trial court did not abuse its discretion in its allocation of credits; and (III) Defendant failed to preserve his right to argue the trial court erred in adopting Pulliam's valuation of the Practice. On remand, the trial court must enter a new equitable distributional order consistent with this opinion and without the benefit of new evidence.

Reversed in part and remanded in part.

Judges HUNTER and TYSON concur.

10. We have carefully reviewed the remaining assignments of error entered by the parties and overrule them without discussion.